630 So.2d 847 (1993)
Cynthia Manalla SCHULZ
v.
Grant A. SCHULZ.
No. 92-CA-2728.
Court of Appeal of Louisiana, Fourth Circuit.
December 21, 1993.
*848 Jerald N. Andry, Gilbert V. Andry, III, New Orleans, for plaintiff.
Glenn E. Diaz, Chalmette, for defendant.
Before KLEES, ARMSTRONG and JONES, JJ.
ARMSTRONG, Judge.
This is an appeal from a judgment setting the amount of child support and alimony pendente lite. Appellant, Grant A. Schulz, argues that the trial court has required him to pay his estranged wife, Cynthia Manalla Schulz, too great an amount of child support. However, finding no abuse of discretion below, we affirm.
Mr. and Mrs. Schulz have two children, Monique and Grant, Jr., who were seventeen and thirteen years old, respectively, at the time of trial. Monique was about to begin her senior year of high school and Grant, Jr. was about to begin his freshman year of high school. Mr. Schulz had left the family house at the request of Mrs. Schulz and both parties filed petitions for divorce which actions were consolidated by the trial court.
Mr. Schulz was employed full time and his annual gross wages were projected to be $19,488.00. Mrs. Schulz was employed parttime and her wages were $42.50 per week. The trial court ordered Mr. Schulz to pay child support of $96.50 per week. Also, the trial court ordered Mr. Schulz to pay an additional $250.00 per month child support for a period of ten months. Lastly, the trial court ordered Mr. Schulz to pay alimony pendente lite of $50.00 per week for the ten months that he was paying the additional $250.00 per month in child support and to pay $75.00 per week alimony pendente lite thereafter.
The controversy in this case revolves around the portion of the child support judgment ordering Mr. Schulz to pay an additional $250.00 per month for ten months.
Monique and Grant, Jr. have attended Catholic school since kindergarten. In order to make the necessary tuition payment for them to attend Archbishop Hannan High School, for their senior and freshman years respectively, Mrs. Schulz obtained a tuition loan in the principal amount of $4,000.00 which was payable in ten monthly installments of $418.00 each. Mrs. Schulz testified that Mr. Schulz approved of and encouraged her to obtain the tuition loan. Mr. Schulz testified to the contrary. The trial court, as will be discussed below, resolved this factual issue in favor of Mrs. Schulz. The additional child support of $250.00 per month for ten months was to pay for part of the $418.00 per month tuition loan payment.
Louisiana's "Guidelines for Determination of Child Support", R.S. 9:315-315.15, govern the determination of the proper amount of child support. See generally Sue Nations, Louisiana Child Support Guidelines: A Preliminary Analysis, 50 La.L.Rev. 1051 (1990). The guidelines create a rebuttable presumption as to the proper amount of child support but allow deviations if the amount of child support provided for by guidelines would not be in the best interests of the child or would be inequitable to the parties. R.S. 9:315.1. The guidelines provide for the calculation of a "basic child support obligation" R.S. 9:315.2, and then provide for various items that either may or shall be added to or subtracted from the basic child support obligation. R.S. 9:315.3-315.7. The trial court *849 must give oral or written reasons for any deviation from the guidelines and those reasons must be made a part of the record of the proceedings. R.S. 9:315.1.B.
With regard to private school education expenses, the guidelines provide:
By agreement of the parties or order of the court, the following expenses incurred on behalf of the child may be added to the basic child support obligation:
(1) Any expenses for attending a special or private or elementary or secondary school to meet the particular educational needs of the child.
R.S. 9:315.6(1).
Also relevant is part of the statutory provision for deviation from the guidelines.
In determining whether to deviate from the guidelines, the court's considerations may include:
* * * * * *
(4) An extraordinary community debt of the parties.
R.S. 9:315.1.C(4).
The trial court's written reasons for judgment state:
The court has deviated from the child support schedule set forth in Revised Statutes, Title 9, Article 315.14, upon finding that the application of the schedule is not in the best interest of the children and would be inequitable for the following reasons:
1) The court finds an extraordinary community debt, namely the loan made to finance the children's education at a private school;
2) Mr. Schulz not only consented to, but directed and encouraged Mrs. Schulz to incur the educational loan; and
3) The minor child, Monique has a particular educational need which justifies adding her school tuition to the basic support obligation, namely the need to complete her education in the school system which she has attended all her life and from which she will graduate in 1993.
It is apparent that the trial court based its decision to order the $250.00 per month (for ten months) additional child support on both R.S. 9:315.1.C(4) and on R.S. 9:315.6(1). The first of the trial court's enumerated reasons is relevant to R.S. 9:315.6(1) and the second is at least arguably relevant to both of those statutory provisions. The trial court's reasons for judgment are worded as if an addition of educational expenses to the basic child support obligation pursuant to R.S. 9:315.6(1) were a deviation from the guidelines. However, such additions to or deductions from the basic child support obligation, done pursuant to R.S. 9:315.3-315.7, being expressly provided for by the guidelines, are not "deviations" from the guidelines. Compare R.S. 9:315.1.C (illustrative list of considerations for deviation from guidelines).
We review the trial court's decision for an abuse of discretion because "a trial court's alimony or child support order will not be reversed except for abuse of discretion". Hogan v. Hogan, 549 So.2d 267, 271 (La. 1989).
The guidelines affect the trial court's exercise of its discretion. "Although the trial court is vested with discretion, the guidelines set parameters which restrict the district court's exercise of its discretion." Corley v. Corley, 600 So.2d 908, 910 (La.App. 4th Cir. 1992). "Although a trial court is still vested with some discretion, the child support guidelines clearly establish that this discretion is now structured and limited." Ellzey v. Ellzey, 594 So.2d 1135, 1137 (La.App. 3rd Cir. 1992) (cited in Corley). See also Smith v. Smith, 597 So.2d 1216, 1217 (La.App. 3rd Cir.1992). Thus, our appellate review of the trial court's exercise of its discretion must be done with the guidelines always in mind.
Mr. Schulz's first assignment of error is that, in light of R.S. 9:315.1.B, the trial court's reasons for judgment are inadequate to support a deviation from the guidelines. Initially, we note that one of the grounds for the trial court's decision to require Mr. Schulz to contribute $250.00 towards payment of each of the $418.00 monthly payments on the tuition loan did not constitute a deviation from the guidelines to which R.S. 9:315.1.B is applicable. Expenses for private school education "may" be added to the basic *850 child support obligation pursuant to the guidelines and thus not in deviation from the guidelines. R.S. 9:315.6(1). Consequently, the special requirement as to reasons for judgment imposed by R.S. 9:315.1.B is not applicable to the decision to add private school expenses to the basic child support obligation. Of course, as in any non-jury case, a party is entitled to written reasons for judgment if timely requested. La.Code Civ. Proc. art. 1917. There is no such request in the record in this case.
The word "may" in R.S. 9:315.6(1) indicates the addition of private school expenses to the basic child support obligation is permissive and not mandatory. See R.S. 1:3. Moreover, because the addition (or not) of the private school expense to the basic support obligation is not a deviation from the guidelines, there is no R.S. 9:315.1.A rebuttable presumption one way or another as to whether to add private school expenses to the basic child support obligation.
The trial court expressly found that Mr. Schulz encouraged Mrs. Schulz to obtain the tuition loan. Mr. Schulz denies this but the testimony shows that the trial judge was not manifestly erroneous or clearly wrong in this determination of fact. See Rosell v. ESCO, 549 So.2d 840, 844-45 (La.1989) (explaining manifest errorclearly wrong standard of review). Also, the trial court made a specific finding that Monique had a "particular need" to attend Catholic school because she had done so all of her life and would graduate at the end of the school year which was about to begin at the time of trial. See generally Corley v. Corley, 600 So.2d 908, 909 (La.App. 4th Cir.1992) (children "had gone to private school for years and the continuation of their education is in their best interests").
Mr. Schulz argues that there was no evidence that Monique and Grant, Jr. must attend catholic school rather than public school "to prevent them from becoming dysfunctional people". But nothing like that is the statutory standard. R.S. 9:315.6(1) does not require a finding of "extraordinary" need, "unusual" need or even a "special need" but only a finding of a "particular" need of the child. Compare R.S. 9:315.5 ("extraordinary" medical expenses added to basic child support obligation).[1]
In light of the trial court's findings of fact, we do not believe that the trial court abused its discretion by exercising its R.S. 9:315.6(1) option to add private school expenses to the basic child support obligation. We note that, in view of the disparity in the income levels of Mr. and Mrs. Schulz ($19,488.00 versus $2,210.00 gross annually), with Mr. Schulz having about 90% of their combined income, requiring Mr. Schulz to contribute only about 60% of the ten monthly tuition loan payments ($250.00 of each $418.00 payment), was a deviation below the guidelinesi.e. in Mr. Schulz's favor.
The trial court did not make a finding that Grant, Jr., who was about to start Archbishop Hannon High School and previously had attended a Catholic elementary school, had a "particular need" to attend Catholic school. Thus, we turn to the trial court's other ground for requiring Mr. Schulz to contribute to the payment of the tuition loanthe existence of an extraordinary community debt in the form of the tuition loan. This ground constitutes a deviation from the guidelines, subject to the R.S. 9:315.1.A rebuttable presumption and the R.S. 9:315.1.B requirement as to reasons for the judgment.
The court may deviate from the guidelines set forth in this part if their application would not be in the best interest of the child or would be inequitable to the parties. The court shall give specific oral or written reasons for the deviation, including a finding as to the amount of support that would have been required under a mechanical application of the guidelines and the particular facts and circumstances that warranted a deviation from the guidelines. The reasons shall be made part of the record of the proceedings.
R.S. 9:315.1.B (emphasis added). Except for the requirement of a finding as to the *851 amount of child support that would have been required by mechanical application of the guidelines, emphasized in the above quotation of the statute, the trial court's reasons for judgment meet the requirements of R.S. 9:315.1.B.
We find that the trial court erred by failing to include in its reasons for judgment a finding as to the amount of child support required by mechanical application of the guidelines. However, in the present case, two circumstances mitigate the effect of that error so that it is not reversible error. First, the child support portion of the trial court's judgment has two componentsone for $96.50 weekly support payments and the other for $250.00 per month support payments limited to ten months. Thus, it is readily apparent that the trial court found the amount of child support required by mechanical application of the guidelines to be $96.50 and this is approximately verifiable by applying the guidelines' schedule for support, R.S. 9:315.14, and worksheet, R.S. 9:315.15, to the income testimony of Mr. and Mrs. Schulz. Second, the issues on appeal relate primarily to the $250.00 per month (for ten months) component of the judgment. Thus, the amount of the child support that would be required under mechanical application of the guidelines has only tangential relevance to the issues on appeal.
Mr. Schulz's second assignment of error is that the trial court did not find Mrs. Schulz to be voluntarily underemployed. Such a finding would have increased Mrs. Schulz's portion, and reduced Mr. Schulz's portion, of the total child support obligation.
If a party is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of his or her income earning potential, unless the party is physically or mentally incapacitated, or is caring for a child of the parties under the age of five years. The amount of the basic child support obligation obtained by use of this Section shall not exceed that amount which the party paying support would have owed had no determination of the other party's earning income potential been made.
R.S. 9:315.9.
"Income" means:
* * * * * *
Potential income of a party, if the party is voluntarily unemployed or underemployed. A party shall not be deemed voluntarily unemployed or underemployed if he or she is absolutely unemployable or incapable of being employed, or if the unemployment or underemployment results through no fault or neglect of the party.
R.S. 9:315(6)(b).
Mrs. Schulz was employed part-time and earned $42.50 per week. She testified that she had made attempts to secure full time work to increase her income. She also testified that she required surgery in the near future, that she would be unable to work for about six weeks after the surgery, and that those circumstances made it more difficult to find a full time job. Mrs. Schulz had limited work experience as she had worked part-time only for three years and had not worked at all for the sixteen years of marriage prior to that. The trial court did not give any written or oral reasons for judgment expressly addressing the issue of whether Mrs. Schulz was voluntarily underemployed, but it is readily apparent that the trial court rejected Mr. Schulz's argument on this point. Mr. Schulz points out how limited were Mrs. Schulz's attempts to find full time work and points out that Mrs. Schulz's surgery had been postponed for two years already for financial reasons and so, perhaps, could be postponed further. However, this is a factual issue, and the trial court, which had to resolve the issue based upon sketchy and conflicting evidence, was not manifestly erroneous or clearly wrong. See Rosell v. ESCO, supra.
Mr. Schulz's third assignment of error is, in essence, an argument that the trial court failed to give express consideration to all the circumstances and, thus, abused its' discretion. First, Mr. Schulz argues that the net effect of the judgment was to leave him with only about a third of his take home pay (i.e. pay after tax and insurance withholdings) to *852 support himself. Of course, that situation would exist for only the ten months during which the tuition loan was repaid. Moreover, it is apparent from the record that Mr. Schulz could live rent-free with his mother although he had moved out of his mother's house and rented a trailer. Cf. R.S. 9:315(6)(c) (Court may consider expense-sharing benefits as income). See also Nations, Louisiana Child Support Guidelines, supra at 1068-69.
Mr. Schulz argues that the court did not take into account that Mr. Schulz pays for health insurance for the children. However, as Mr. Schulz's own brief concedes, there is no evidence in the record of the amount of such payments or even that they were made. Moreover, the cost of health insurance premiums "shall" be added to the basic child support obligation, R.S. 9:315.4, and Mr. Schulz would be required to pay 90% of them (because he had 90% of the combined income of Mrs. Schulz and himself) in any event. R.S. 9:315.8.
Lastly, Mr. Schulz argues simply that the family did not have enough money to send the children to Catholic school. Mr. Schulz's point is not without merit. The Schulz family's financial situation was difficult in light of their modest income and the multiplication of expenses caused by separation. However, at the time of trial, the tuition loan debt already had been incurred and, the trial court found, had been incurred with Mr. Schulz's direction, consent and encouragement. Moreover, as the legislature recognized by the inclusion of R.S. 9:315.6(1) in the guidelines, making private school education available is a worthy goal. Considering Mr. Schulz's concerns in light of the factual record, we find no abuse of discretion by the trial court.
For the foregoing reasons the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] The heading to R.S. 9:315.5 refers to "extraordinary medical expenses" and the heading to R.S. 9:315.6 refers to "other extraordinary expenses" but these headings are for convenience only and not part of the law. R.S. 1:13. The text of R.S. 9:315.6(1), i.e. the law, does not use the word extraordinary.