634 So.2d 498 (1994)
Lynn P. PERCLE
v.
Mitzi Ramsden Percle NOLL.
No. 93 CA 1272.
Court of Appeal of Louisiana, First Circuit.
March 11, 1994.
*499 Mark D. Chiasson, Thibodaux, for plaintiff/appellee Lynn P. Percle.
Donald D. McKeithen, Jr., Columbia, for defendant/appellant Mitzi Ramsden Percle Noll.
Before LOTTINGER, C.J., and CRAIN and LeBLANC, JJ.
CRAIN, Judge.
The defendant-mother of two minor girls appeals a judgment of the district court which awarded custody to the plaintiff-father and ordered her to pay child support in the amount of $264.84 per month. We affirm the judgment of the district court.
The parties to this litigation, Lynn Percle and Mitzi Percle Noll (hereafter Percle) were married November 21, 1981. Two children were born of the union: Kitra Percle (who was 10 years old at the time of trial) and Lindsey Percle (who was 7½ years old at the time of trial). In late 1986, Ms. Percle left the matrimonial domicile, with the two minor children of the marriage, and moved to Michigan, where her family resided.
On October 16, 1986, Mr. Percle filed an action for divorce on the grounds of his wife's adultery. He asked for joint custody and sought to have his home made the principal residence. He alleged that child support had been established. Ms. Percle answered the petition. She admitted adultery had occurred, but that this conduct was not ongoing. She sought joint custody, child support and a separation of the community.
On January 9, 1987, following a hearing at which Ms. Percle was not present but was represented, Mr. Percle was granted a divorce. He was awarded sole custody of the two children of the marriage, with no provision for Ms. Percle's visitation.[1] The children were in the physical custody of their mother and shortly after the issuance of this decree, their exact whereabouts were unknown, according to their father.
Following several years of searching, Mr. Percle located his former wife and their children in Tennessee. On April 3, 1992, he secured a court order from Tennessee wherein the children were ordered to be produced for a custody hearing in Louisiana. Ms. Percle then sought sole custody. On October 27, 1992, Mr. Percle filed a rule for child support. On November 9, 1992, Ms. Percle filed a rule seeking visitation. The matter was tried over a period of three days.[2] In a judgment rendered January 14, 1993, the court awarded sole custody of Kitra and Lindsey to their father, with limited supervised visitation to their mother to be had on every third Saturday, from 1 p.m. to 5 p.m. The mother was afforded free telephone access to the children, with the restriction that, if the communications became burdensome, the Court would designate a specific schedule. Ms. Percle was ordered to pay child support in the amount of $264.00 per month. This appeal followed.
On appeal Ms. Percle complains that the trial court erred in awarding custody to her former husband. Additionally, she argues the trial court erred in the nature of visitation privileges she was allowed and in ordering her to pay child support.
The record reflects a conflict in this testimony, concerning the facts surrounding this controversy.
Ms. Percle testified that she and her two minor children, along with a child of a prior marriage, moved to her home state of Michigan in December, 1986. According to Ms. Percle, her former husband knew of this arrangement. Ms. Percle testified she initially *500 lived with her uncle in Michigan. She denied moving to Michigan with a friend, Dwayne Peltier, and living with him there.
She admitted speaking to her former husband shortly before the couple's divorce. Additionally, she concedes that he informed her of the divorce degree, but according to Ms. Percle, he never told her that he had received custody. Ms. Percle further stated that she was in contact with her husband in late 1986, until mid-1987, when she requested financial assistance and he sought to secure her signature on a tax return. According to Ms. Percle her former husband declined to speak with his children or to send them presents or financial assistance. Ms. Percle stated that after she moved to an apartment in Michigan that she remained in contact with Mr. Percle. During this period of time she sought public assistance for herself and her children. Ms. Percle and the children began to reside with Randy Noll on April 7, 1987, and the couple was married several months thereafter. Ms. Percle testified that on July 2, 1987, she received copies of her divorce decree and it was, at this time, that she became aware that Mr. Percle had legal custody of their two minor children. According to Ms. Percle, her former husband never requested the return of their children and no effort, by her, was made to return them.
On September 1, 1987, Ms. Percle, Mr. Noll and Ms. Percle's three children moved to West Palm Beach. At that time, the birth certificates of Kitra and Lindsey Percle were forged and they were given the family name of "Noll" by Mr. Noll and Ms. Percle.
According to this couple, the birth certificates were forged in order to prevent embarrassment to the children that could have resulted from the stigma of their parent's divorce.
While in Florida, this family was joined by Mr. Noll's daughter of a prior marriage. The couple moved to three locations, while in Florida.
The family thereafter moved to Tennessee, and they lived in two different locations, while in that state. The family resided for a time at a campground in Lake City, Tennessee.
The Percle children were baptized Catholic. They were reared by the Noll couple as Jehovah Witnesses. In this regard, they were brought with Mr. Noll, when he engaged in door-to-door solicitation. There was also testimony that Mr. Noll would practice "drawing blood" from one of the Percle children.
Mr. Noll's testimony corroborated that of his wife. Additionally, according to Mr. Noll, Mr. Percle made no contact with his former wife during their stay in Florida and Tennessee. The couple testified that it was Mr. Percle's position that the Percle children were the sole responsibility of their mother. They denied concealing the children from Mr. Percle.
Much of his former wife's testimony was refuted by Mr. Percle and witnesses called on his behalf.
Mr. Lynn Percle, a 33 year old security guard with Waterford II nuclear plant, testified that he and Mitzi Percle had married in 1980. Their daughter Lindsey was born December 7, 1984, and Kitra was born February 24, 1982. Both children were baptized Catholic. He stated that he secured a divorce from Mitzi and was awarded sole custody, without any visitation rights being awarded to Ms. Percle. He testified that, at the time of his divorce, the whereabouts of his children, then ages 2 and 5 years respectively, were unknown. He did not see nor hear from them from Early 1987 until April, 1992. He did, however, acknowledge knowing that his former wife and his children had moved to Michigan with Dwayne Peltier.
He stated that he, thereafter, sought the assistance of his local Congressman in an attempt to locate his children. He was instructed to contact an attorney in Michigan. The attorney had difficulty locating Ms. Percle. According to Mr. Percle, an attorney advised him not to pay child support, as this would cause Ms. Percle to return the children. Mr. Percle stated that, during his brief contact with Ms. Percle in early 1987, he was informed that if she did not receive money, he would not see the children.
*501 Mr. Percle testified that after he lost contact with Ms. Percle, he contacted her relatives in an attempt to locate his children, but they refused to co-operate with him. He then sought the assistance of the Lafourche Parish Sheriff's Office and a Child Search Organization. According to Mr. Percle, he conducted a follow-up on any information he'd received as to the location of his children. He stated that as a result of his contact with the Sheriff's Office and the Child Search Organization, he was informed that his children and former wife were living in Port St. Lucie, Florida. He stated that he travelled to that area, but was unsuccessful in locating them. He did, however, receive information from the principal of his children's former school that the family had moved to Tennessee. With this information, Mr. Percle went to Tennessee and contacted the local authorities who arranged for the return of his children to Louisiana.
Mr. Percle further testified that at the time of trial the children had been with him for 9 months. They had learned to know him and were being cared for by him, his new wife and other family members who lived in close proximity. He said the children were enrolled in the local school system, were adjusting well and accelerating academically. The girls attended Catholic church regularly with him or, in his absence, with other family members.

Child Custody
The defendant-mother contends that the trial court erred in maintaining custody with the children's father in that she was the primary caretaker of the children and their physical custodian. She further argues that the trial court erred when it failed to take into account that she had reformed her prior indiscretions.
Other determinations of the trial judge in cases of child custody are entitled to great weight and will not be disturbed absent a clear abuse of discretion. Everett v. Everett, 433 So.2d 705 (La.1983). In a proceeding to change custody, as in cases of an original grant of custody, the best interest of the children is paramount. La.C.C. Arts. 131-134.[3]Bergeron v. Bergeron, 492 So.2d 1193 (La.1986). One seeking to change custody bears the heavy burden of proving that the continuation of the present custody is so deleterious to the children as to justify a modification of the custody decree or to prove by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. Bergeron v. Bergeron, supra at 1200.
In this case, Mr. Percle was initially awarded sole custody of the two minor children and no provision for visitation was afforded. Ms. Percle actually had physical custody of the children for 5 years. In the most current custody proceeding, Ms. Percle sought a judicial change of custody to be awarded solely to herself. She bore the heavy burden of proving that the award to her former husband was so deleterious as to warrant a change or to prove by clear and convincing evidence that the advantages to the children substantially outweighed the harm a change of environment would be likely to cause. She failed to meet this burden of proof and judicial custody was maintained in Mr. Percle, while the decree was modified to allow Ms. Percle supervised visitation.
In particular the trial court found that Ms. Noll, although aware that her former husband had sole custody of their two minor children, made no effort to seek a judicial change of custody. Moreover, the court found that Ms. Noll then set out to hide the children from their father, by moving 8 times in 5 years and acting in concert with her live-in lover to forge the childrens' birth certificates. These acts lead the court to the following conclusion:
The Court can only conclude from her activities that she is morally unfit to have custody of these children. The Court finds that she is morally unfit because she did one of the things which is abusive to children. She deprived the children of the care, counsel and love of their father. She hid them from the father. I find this was a horrible, vicious thing that she did in doing so. This makes her absolutely morally *502 unfit as a parent. The forgeries of the birth certificate and the other illegal activities while living with a man that she was not married to.
The court also found that the children's current environment with their father was warm, healthy and wholesome.
The record fully supports the trial judge's findings and his conclusion that a continuation of legal custody by Mr. Percle was in the best interest of the children and we find no error in that regard. Bergeron v. Bergeron, supra; Everett v. Everett, supra.

Visitation
Ms. Percle alleges that the grant of visitation which was restricted, supervised and failed to take into account holidays, was an abuse of discretion.
The right of visitation for a noncustodial parent is a natural right with respect to his children, however, this right is subservient to the best interest of the children. See: Maxwell v. LeBlanc, 434 So.2d 375 (La. 1983). The parent seeking to restrict access has the burden of proving that such visitation would not be in the best interest of the child. Maxwell v. LeBlanc, supra. Absent such proof, the parent is entitled to reasonable visitation rights. Maxwell v. LeBlanc, supra. In such instances the trial judge is vested with great discretion. Maxwell v. LeBlanc, supra.
In limiting Ms. Percle's visitation time the trial judge gave the following reasons:
Let's deal with visitation. Counsel is correct, absolutely, one hundred percent (100%), totally correct when he says that Ms. Noll is not to be trusted. She kidnapped the children. She ran away. She stole them. I'm not going to allow her to have an opportunity to do this again. I will award her visitation every third Saturday of the month, from 1:00 in the afternoon to 5:00 in the evening, this supervision to be strictly and closely, personally supervised.
* * * * * *
It's not that I wish to limit her access to the children. What I am afraid of is that if she has the children by herself, she'll run off with them, as she did before.
In the present case Mr. Percle successfully proved that a restriction in visitation by his former wife was in the best interest of the children. The reasons for the restrictions as stated in the trial judge's reasons are fully supported by the record and we find no error in the ruling of the trial court judge.

Child Support
In her final assignment of error, Ms. Percle contends that the trial court erred in ordering her to pay child support. On January 14, 1993, the trial court for the first time, fixed Ms. Percle's child support obligation at $264.84 per month, retroactive to October 22, 1992.
Fathers and mothers by the very act of marrying, contract together the obligation of supporting, maintaining and educating their children. La.C.C. Art. 227. Generally the custodial parent has the right to seek child support from the non-custodial parent for financial assistance in the maintenance of the children. Barkemeyer v. Barkemeyer, 598 So.2d 550 (La.App. 4th Cir.1992), writ den. 619 So.2d 574 (1993). The guidelines for determination of child support shall apply to "any proceeding to establish or modify child support filed after October 1, 1989". La.R.S. 9:315.1 et seq. Fuge v. Uiterwyk, 613 So.2d 717 (La.App. 4th Cir.1993). Use of the guidelines gives rise to the presumption that an award of child support is proper. La.R.S. 9:315.1. The utilization of the guidelines begins with a consideration of the verified income statement showing gross income and adjusted gross income together with documentation of current and past earnings. La. R.S. 9:315.2. The adjusted gross income of each party is added together and responds to a certain figure of support, depending upon the number of children involved. La.R.S. 9:315.2; 9:315.14. Thereafter the percentage obligation of each parent is determined by calculating their respective share of total adjusted gross income. La.R.S. 9:315.2. In arriving at the initial income figure of each spouse, voluntary unemployment or under employment may be taken into account and an income earning potential established. La. *503 R.S. 9:315.2; 9:315.9. The court may deviate from the guidelines if it is in the best interest of the children, however if this is done, written reasons for the deviation shall be given. La.R.S. 9:315.1. Generally, the trial court's order of child support is entitled to great weight and will not be disturbed on appeal absent a clear abuse of discretion. Fuge v. Uiterwyk, supra.
In the present case the trial court judge applied the statutory guidelines. He found that Mr. Percle earned $1,000 gross income per month. The court further found that Ms. Percle was earning $50.00 per month but that she was under-employed. He found that she should be earning $662.26 per month. Applying this to the schedule the court arrived at a monthly child support obligation of $264.84.
On appeal Ms. Percle complains that the court erred in finding her under-employed. We disagree.
The record indicates that Ms. Percle has a college education. Her unemployment was apparently due to her choice not to work. At the time of trial she was receiving training as a respiratory technician. Under these circumstances we cannot say the trial judge erred in finding Ms. Percle was under-employed.
The judge correctly applied the statutory guidelines in awarding child support and we find no error in this regard.
For the reasons assigned the judgment of the trial court is affirmed at defendant's costs.
AFFIRMED.
NOTES
[1] The proceedings involving the initial grant of custody do not form a part of this record.
[2] These hearings were conducted July 7, 1992, November 9, 1992, and January 13, 1993.
[3] Formerly, C.C. Arts. 146 and 157.