682 So.2d 312 (1996)
Craig CAMPBELL
v.
Lydia Womack CAMPBELL.
No. 95 CA 1711.
Court of Appeal of Louisiana, First Circuit.
October 10, 1996.
*314 Lee Herrington, Baton Rouge, for Defendant-in-RuleAppellant Craig Campbell.
Sylvia Roberts, Baton Rouge, for Plaintiff-in-RuleAppellee Lydia Womack Campbell.
Before SHORTESS, PARRO and KUHN, JJ.
*315 PARRO, Judge.
This is an appeal from a family court judgment granting an increase in child support. For the following reasons, this court affirms.

Facts and Procedural History
Craig Campbell ("Campbell") and Lydia Womack Campbell ("Womack") were divorced on May 2, 1991, in Baton Rouge, Louisiana. The judgment of divorce provided for joint custody of their minor children, William Womack Campbell ("William") and Lydia C. Campbell ("Caroline"), with Womack named as the domiciliary parent. Regarding Campbell's custodial rights, the judgment provided for custody with him on alternate weekends from Friday afternoon through Sunday evening, as well as one evening each week and other agreed upon times especially during the summer and holiday periods. Pursuant to the judgment, Womack and Campbell were to jointly participate in the making of major decisions including school, medical concerns and religion. Campbell was ordered to pay $400 monthly in child support per child, plus health insurance and his portion of uncovered medical expenses.
At the time of their divorce, William was enrolled in the public school system at Westdale Elementary School ("Westdale"), and Caroline was only five years old. When it was time for Caroline to begin school, she also attended Westdale. During the 1993-1994 school year, William and Caroline were going to school at Westdale. William was in the fifth grade and Caroline was in the third grade.
On December 1, 1993, Campbell filed a rule for modification of custody, seeking to be designated as the domiciliary parent due to his dissatisfaction with his children's academic performance in school and with Womack's interaction with the children with respect to their schooling. Womack responded on January 4, 1994, with a rule seeking permission to have William and Caroline placed in a program of intensive one-on-one tutoring preparatory to enrolling them in a private school. She also filed a rule on February 8, 1994, seeking a modification in child support based on allegations of an increase in expenses and in Campbell's income. In this latter rule, Womack also sought to modify the family court's prior award of joint custody to give her sole custody of the children.
At the close of hearings in the custody proceeding on April 18, 1994, the parties entered into a consent judgment regarding custody, which was signed by the judge on June 23, 1994. This judgment continued the joint custody arrangement and retained Womack as the domiciliary parent. According to this judgment, Womack was vested with the authority to make all decisions affecting the children unless an implementation order provided otherwise. Campbell's custodial rights were expanded by this judgment which allowed the children to reside with Campbell on alternating weekends (Friday evening through Monday morning), Monday evening through Tuesday morning on non-custodial weekends, designated periods during the summer, and other specified times. The custodial time allotted to him by this consent judgment amounted to approximately 37 percent of the children's total time. With regard to her request concerning the children's schooling, the judgment authorized Womack to enroll William and Caroline in a private school and to continue their present tutoring arrangement. However, Campbell reserved his right to challenge the inclusion of their private school tuition in a child support calculation, which would be decided after further proceedings in the child support matter.
On August 5, 1994, Womack amended her rule for modification of child support to request inclusion of William and Caroline's private school tuition in the calculation of child support since she claimed the children had a particular educational need for that type of educational setting. Following the conclusion of the proceedings on Womack's rule to modify child support, the family court entered judgment fixing child support at $1,213 per month retroactive to February 8, 1994, and ordering a continuation of his obligation to provide health insurance and his portion of uncovered medical expenses. Campbell was also ordered to pay his proportionate share, 85 percent, of the children's tutoring expenses. The family court awarded the following *316 expert witness fees: $300 for Jean Hayes, teacher/tutor, $2,500 for Michael Burris, CPA, and $2,500 for Henry Charles Silvio, CPA.
From the judgment increasing his child support obligation, Campbell appealed and contends the family court erred in the following respects:
1. in calculating his gross income for purposes of determining child support;
2. in awarding support for private school tuition since no particular educational need was shown;
3. in awarding support for after-school daycare expenses since Womack was unemployed; and
4. in refusing to grant a deviation from the child support guidelines since he had custody of the children for approximately 37 percent of the time under the terms of the June 23,1994, custody judgment and since Womack did not have to pay for housing expenses.
Campbell also complained that the expert witness fees set by the trial court were excessive.

Standard of Review
The appellate court's review of facts is governed by the manifest error clearly wrong standard. The two-part test for the appellate review of facts is: 1) whether there is a reasonable factual basis in the record for the finding of the trial court, and 2) whether the record establishes that the finding is not manifestly erroneous. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). An appellate court may not set aside a trial court's factual finding unless, after reviewing the record in its entirety, it determines the trial court's finding was clearly wrong. Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart v. State, Through Department of Transportation and Development, 617 So.2d at 882. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Id.
Generally, the trial court's order of child support is entitled to great weight and will not be disturbed on appeal absent clear abuse of discretion. Percle v. Noll, 93-1272, p. 9 (La.App. 1st Cir. 3/11/94), 634 So.2d 498, 503. Upon finding an abuse of discretion with respect to the amount of the award for child support, an appellate court is not free to make a de novo review in order to award the amount it considers appropriate based on the evidence. Rather, the appellate court can only lower (or raise) the amount to the highest point (lowest point) which was reasonably within the discretion of the trial court. Cobb v. Cobb, 554 So.2d 174, 176 (La.App. 2nd Cir.1989); Seal v. Bell, 464 So.2d 1026, 1029 (La.App. 1st Cir.1985).

Modification of Child Support
In order to alter an award for support, the party seeking a modification must show a substantial change in the circumstances of one of the parties between the time of the previous award and the time of the motion for modification.[1]See LSA-R.S. *317 9:311(A); Richardson v. Richardson, 590 So.2d 1302, 1304 (La.App. 1st Cir.1991); Phillips v. Phillips, 569 So.2d 127, 128 (La. App. 1st Cir.1990).
Furthermore, once a change in circumstances is shown, LSA-R.S. 9:315.1 provides that the child support guidelines apply in any proceeding to modify child support filed on or after October 1,1989. There shall be a rebuttable presumption that the amount of child support obtained by use of the guidelines is the proper amount of child support. LSA-R.S. 9:315.1(A). The utilization of the child support guidelines (LSA-R.S.9:315-315.15) begins with a consideration of the verified income statement of each party showing gross income and adjusted gross income, together with documentation of current and past earnings. LSA-R.S. 9:315.2(A). In arriving at the income figure of each party, voluntary unemployment or underemployment may be taken into account and an income earning potential determined. LSA-R.S. 9:315.2(B); 9:315.9. The adjusted gross income of each party is combined and the basic child support obligation amount from the schedule in LSA-R.S. 9:315.14 is determined by the number of children involved. LSA-R.S. 9:315.2(D). The percentage share of each party is calculated from his or her proportionate share of the combined adjusted gross income. LSA-R.S. 9:315.2(C). The court may deviate from the guidelines if their application would not be in the best interest of the children or would be inequitable to the parties; however, if this is done, specific oral or written reasons for the deviation shall be given, which shall become part of the record. LSA-R.S. 9:315.1(B); see Percle v. Noll, 93-1272 at 8-9, 634 So.2d at 502-503.
After finding that Womack proved a particular educational need for private education existed in this case, the family court concluded the increased expenses associated with the private schooling and Campbell's increased income gave rise to a change in circumstances sufficient to justify a modification of child support. To determine if modification was warranted, this court must review the family court's findings pertaining to Campbell's gross income and private schooling.

Campbell's Gross Income[2]
Prior to their marriage, Campbell formed a corporation, Craig Campbell Construction Co., Inc. ("Campbell Construction"). This corporation was still in existence at the time of their divorce. On January 1, 1993, Campbell Construction elected to be treated as a Subchapter S corporation for tax purposes.
The family court found Campbell's annual gross income to be $73,526, or $6,127 per month.[3] Campbell claimed the family court erred in the calculation of his income which, he argued, should not include Campbell Construction's income. Campbell contended that $49,771 is the correct calculation of his annual income as evidenced by the testimony of his expert certified public accountant, Henry C. Silvio. On the other hand, Womack's expert certified public accountant, Michael Burris, calculated Campbell's income to be $89,245.
In 1993, Campbell Construction reported ordinary income of $33,359 to the Internal Revenue Service, after deduction of all business expenses (including Campbell's salary); however, the "Statement of Operations" revealed a net income of $40,427 for that year. On his 1993 individual tax return, Campbell's federal adjusted gross income consisted of $37,671 (wages paid to him by Campbell Construction), $1,507 (interest income), $270 (dividend income), $34,078 (Form 1040, schedule E income from Campbell Construction), and $760 (other income). Since the proceeding in this matter occurred prior to the end of the tax year, Campbell was unable to produce actual income figures for Campbell Construction for 1994. With regard to the evidence *318 introduced concerning Campbell Construction's 1994 earnings, the family court noted:
Mr. Campbell produced a statement prepared by Mr. Silvio termed a "compilation of interim operating statement". It is claimed that such demonstrates the company is losing money. However, it is very incomplete as to information necessary to truly determine the company's position at this time. As Mr. Burris testified, it did not reflect the "bottom line", contained no "review report", and did not include jobs completed or progressed since August, 1994.
Finally, no evidence is in the record as to Mr. Campbell's 1994 income except Exhibit F-1 which is his own calculation at $3,139.27 per month. Certainly without a total presentation of his and the company's entire financial posture at this time, the Court cannot accept this evidence as conclusive.
Therefore, the 1993 income figures were used by the family court in determining Campbell's gross income. In light of the paucity of evidence and the nature of the interim reporting on various jobs, we find no abuse of discretion or manifest error in the family court's use of Campbell's 1993 income figures, especially since the utilization of such income was not contested by Campbell.
In its calculations, the family court looked to the income reported by Campbell on his individual tax return. Although neither expert utilized the approach taken by the family court in arriving at a gross income figure, both agreed with the inclusion of certain income items. The experts' primary area of disagreement concerned the issue of the inclusion of Campbell Construction's income. The various income calculations were as follows:

Income Item Family Campbell's Womack's
 Court Expert[4] Expert
Wages $37,671 $37,671 $37,671
S Corporation 34,078  40,427
Interest 1,507
Dividend 270
Paid Legal Fees 6,000 6,000
Real Estate Rental 6,100 5,147
Total $73,526 $49,771 $89,245

Although the family court's calculation differed from that suggested by Womack's expert, it agreed Campbell Construction's income should be included in Campbell's gross income. It is with this finding that Campbell takes issue.
LSA-R.S. 9:315(4) defines "gross income," in pertinent part, as:
(a) The income from any source, including but not limited to salaries, wages, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits, worker's compensation benefits, unemployment insurance benefits, disability insurance benefits, and spousal support received from a preexisting spousal support obligation;
(b) Expense reimbursement or in-kind payments received by a parent in the course of employment, self-employment, or operation of a business, if the reimbursements or payments are significant and reduce the parent's personal living expenses. Such payments include but are not limited to a company car, free housing, or reimbursed meals; and
(c) Gross receipts minus ordinary and necessary expenses required to produce income, for purposes of income from self-employment, rent, royalties, proprietorship of a business, or joint ownership or a partnership or closely held corporation. "Ordinary and necessary expenses" shall not include amounts allowable by the Internal Revenue Service for the accelerated component of depreciation expenses or investment tax credits or any other business expenses determined by the court to be inappropriate for determining gross income for purposes of calculating child support.
Campbell owned 100 percent of the stock in Campbell Construction. As its sole shareholder, Campbell had complete control over the affairs of Campbell Construction, including control over the amount of his *319 salary, company loans to him, and dividend distributions. However, he contends his use of company profits was limited due to industry requirements, particularly those imposed by bonding companies. Nonetheless, recognizing the restraints placed on his ability to draw a larger salary, Campbell obtained additional money from his company in the form of a loan to a shareholder thereby making the company profits available to him for personal use.
LSA-R.S. 9:315(4)(c) requires the inclusion of "[g]ross receipts minus ordinary and necessary expenses required to produce income, for purposes of income from ... a ... closely held corporation" in a calculation of gross income. A closely held corporation is one "whose shares, or at least voting shares, are held by a single shareholder or closely-knit group of shareholders." Black's Law Dictionary 341 (6th ed.1990). Generally, a closely held corporation does not have any public investors, its shareholders are active in the conduct of the business, and a few shareholders are in control of corporate policy and are in a position to benefit personally from such policy. Id. Based on the evidence presented, Campbell Construction was obviously a closely held corporation. This fact has never been denied by Campbell.
Since Campbell Construction was a closely held corporation and Campbell had vast discretion in managing its finances, we are unable to find that the family court abused its discretion or was clearly wrong in including an amount equal to Campbell Construction's gross receipts minus ordinary and necessary expenses in determining Campbell's gross income for purposes of calculating child support in this case.[5]

Private School Expenses
Based on a combined monthly gross income of $7,187, the family court calculated the basic child support obligation to be $1,393 per month. After considering the cost of attending private school and the after school program, the family court found the total child support obligation to be $1,427 per month. Of this amount, 85 percent was to be paid by Campbell.
Campbell contends the family court erred in including private school tuition and related expenses in the child support award since there was no agreement between the parties and no showing that the particular educational needs of his children required them to attend a private school. The judgment reflects $359 for the monthly expenses for attending the private school was added to the basic child support amount found in the schedule. After considering these and other expenses, the family court found the total child support obligation was $1,427.[6] Without addressing the accuracy of the family court's computation of the total child support obligation, we proceed to determine if the family court was manifestly erroneous or abused its discretion in finding Womack proved these expenses should be added.
William began school while Campbell and Womack were married and attended kindergarten at Westdale Elementary School in Baton Rouge. He was still enrolled at this public school when the parties divorced. It was not until after the divorce that Caroline became old enough to attend school, at which time she was likewise enrolled in kindergarten at Westdale. When the motions for modification of child custody and child support were filed, William and Caroline were enrolled at Westdale. William was in the fifth grade, and Caroline was in the third. However, both children were experiencing academic difficulties which prompted Campbell to file his rule to change custody. Campbell felt that Womack was largely to blame for their academic problems because she failed to get actively involved with their schooling. Womack blamed the children's academic difficulties *320 on the public school they attended, which led to the filing of her rule to remove the children from public school entirely, substituting instead an intensive tutoring program and seeking to enroll the children in private school.
Expenses associated with private school are not automatically added to the basic child support obligation. Regarding the inclusion of educational expenses, LSA-R.S. 9:315.6 states, in pertinent part:
By agreement of the parties or order of the court, the following expenses incurred on behalf of the child may be added to the basic child support obligation:
(1) Any expenses for attending a special or private elementary or secondary school to meet the particular educational needs of the child.
The word "may" in this statute indicates the addition of private school expenses is permissive and not mandatory. See LSA-R.S. 1:3; Schulz v. Schulz, 630 So.2d 847, 850 (La.App. 4th Cir.1993). In the absence of an agreement by the parties, in order to warrant the inclusion of private school tuition expenses in a child support award, some evidence must be presented to show a particular educational need of the child which is met by attendance at a private school.[7]Buchert v. Buchert, 93-1819, pp. 11-12 (La.App. 1st Cir. 8/26/94), 642 So.2d 300, 307; Bertrand v. Bertrand, 637 So.2d 531, 534 (La.App. 1st Cir.1993).
The determination of a particular educational need of a child to attend a private school includes consideration of the child's history of school attendance and whether a continuation of the child's education in the same setting is in the child's best interest. See Buchert v. Buchert, 93-1819 at 12, 642 So.2d at 307. A child's successful continuation of his or her education in a proven academic environment is generally found to be in his or her best interest. Trahan v. Panagiotis, 94-1281, p. 5 (La.App. 3rd Cir. 4/5/95), 654 So.2d 398, 400, writ denied, 95-1720 (La.10/27/95), 661 So.2d 1350; Dempsey v. Stevens, 611 So.2d 815, 818 (La.App. 3rd Cir.1992); Corley v. Corley, 600 So.2d 908, 909 (La.App. 4th Cir.1992).[8]
In this case, the nondomiciliary parent (Campbell) never voiced any agreement with Womack's decision to send William and Caroline to a private school. Although these children were going to a private school when this matter was heard on September 15, 1994, their enrollment at the private school commenced with the 1994-1995 school year at which time they were required to repeat their prior school year's grade levels. For the majority of their school age lives (Williamkindergarten through fifth grade and Carolinekindergarten through third grade), these children attended Westdale. They had attended private school for approximately a one-month duration at the time of the final hearing. However, the evidence showed the only available public school was not satisfying the children's needs and therefore was not a proven academic environment.
Considering the extensive evidence presented, this court concludes there was a reasonable factual basis to support the family court's determination that the particular educational needs of these children required that they attend a private school at this time.[9] Therefore, the family court did not abuse its discretion by exercising its LSA-R.S. 9:315.6(1) option to add private school expenses to the basic child support obligation.

Day Care Costs
Campbell also complains the family court erred in including costs of the after *321 school program in the child support award since Womack was not employed at the time of the trial. Womack defends the family court's ruling by associating it with the particular educational needs of the children. However, the family court expressly found the after school program was equated to day care. We find no manifest error in this factual finding.
LSA-R.S. 9:315.3 mandates the addition of "net child care costs" to the basic child support obligation. "Net child care costs" are the reasonable costs of child care incurred by a party due to employment or job search, minus the value of the federal income tax credit for child care. LSA-R.S. 9:315(7). Womack was admittedly unemployed at the time of the trial, but this fact alone did not preclude the family court from including day care costs. Under LSA-R.S. 9:315(7), the reasonable costs of child care incurred by a party due to a job search would also constitute "net child care costs." Womack testified that she planned to return to work as soon as possible. The family court obviously believed these costs were necessitated by Womack's efforts to obtain employment. Furthermore, we are mindful the parties stipulated that Womack's monthly income was considered to be $1,060.80. This amount was used in determining the basic child support obligation and in allocating financial responsibility between the parties. Therefore, we are unable to find manifest error in the family court's apparent finding that the costs of the after school program constituted net child care costs as defined by LSA-R.S. 9:315(7). As such, Womack was legally entitled to have these costs added to the basic child support obligation. See LSA-R.S. 9:315.3.

Reductions
Campbell argued the family court abused its discretion in failing to adjust the amount of support when considering the amount of time the children spend at his home and in failing to deviate from the child support guidelines in light of the fact that Womack has no monthly housing expense.

A. Reduction for Proportion of Time Spent with Campbell

Campbell requested the family court reduce his child support obligation in proportion to the time William and Caroline spent with him throughout the year. Campbell stated the obvious impact of the change in custodial rights resulting from the June 23, 1993, judgment was an increase in his daily support expenses and a decrease in Womack's daily support expenses since the time spent with her was reduced.
The child support guidelines state that the nondomiciliary parent owes his or her portion of the total child support obligation to the parent with domiciliary custody. LSA-R.S. 9:315.8(D). The obligation is so directed because it is assumed that the party with domiciliary custody will bear most of the costs of raising the children. State in the Interest of Travers v. Travers, 28,022, p. 4 (La.App. 2nd Cir. 12/6/95), 665 So.2d 625, 627. However, some custody arrangements pose more complex support problems.
The trial court shall consider the period of time spent by the children with the nondomiciliary party as a basis for adjustment to the amount of child support to be paid during that time. LSA-R.S. 9:315.8(E). However, LSA-R.S. 9:315.8(E) further requires the court to include in such consideration the continuing expenses of the domiciliary party. See Temple v. Temple, 94-1244, p. 2 (La.App. 3rd Cir. 3/1/95), 651 So.2d 466, 467.
Where the children spend a substantial amount of time in both parents' residences, their needs and expenses will often exceed those contemplated by the child support guidelines. However, it would be inequitable to the parents to calculate the support obligation by treating both parents as sole domiciliary custodians of all the children because of the expenses one saves during the time the children live with the other parent. State in the Interest of Travers v. Travers, 28,022 at 5, 665 So.2d at 628.
In this case, the minor children are primarily in the home of Womack. There were no extended periods of residency with Campbell, except in the summer, that might substantiate an abatement in monthly support *322 payments. See Temple v. Temple, 94-1244 at 3, 651 So.2d at 468. Though the total number of days spent with Campbell is significant, it is clear that the continuing home environment must be provided by Womack as the domiciliary parent. Id.; see Corley v. Corley, 600 So.2d at 911. Furthermore, there is nothing in the record which affirmatively shows the children's expenses with Womack have been reduced because of Campbell's increased custodial rights. Although Campbell argues the family court should have granted an adjustment of $200 monthly, Campbell failed to provide evidence of expenditures incurred for the children while he had physical custody of them. See Mathers v. Mathers, 579 So.2d 503, 505 (La. App. 4th Cir.1991).
Our review of the record reveals the family court considered both the time the children spent with Campbell and the ongoing expenses of Womack as required by LSA-R.S. 9:315.8(E). Therefore, we find no abuse of the family court's discretion in its denial of Campbell's request for a reduction in his child support obligation in proportion to the time the children spent with him during the year.

B. Reduction for No Monthly Housing Expense

Campbell also requested reduction of his child support obligation based on his allegation that Womack had absolutely no housing expenses for William and Caroline because Womack's uncle donated their place of residence in trust to Womack, William and Caroline, one-third to each. With respect to this contention, Campbell advanced two theories purporting to support reduction: (1) the rental value of the children's portion of the home should be considered as their income and thus used to reduce the support obligation pursuant to LSA-R.S. 9:315.7, and (2) since the child support guidelines include housing expenses, it was inequitable to use the full amount set forth in the schedule of support (LSA-R.S.9:315.14); therefore, the family court, in exercising its discretion, should have deviated from the guidelines under the authority of LSA-R.S. 9:315.1(B) and (C)(7).
It is apparent from the record that Womack lived with her children in a home that was given to the three of them. There is little doubt that this gift impacted their monthly living expenses. Although Campbell suggested $400 monthly as the amount saved, he failed to introduce any evidence pertaining to the donated house, such as its market value, its rental value, its condition and the date of the donation. Considering this failure of proof of this alleged "income" of the children, we find no abuse of discretion in the family court's denial of a LSA-R.S. 9:315.7 deduction.[10]
Under the authority of LSA-R.S. 9:315.1(B) and (C)(7), the family court could have deviated from the guidelines if it felt its application would be inequitable to the parties. Although we feel the absence of proof regarding the rental value of the house is not fatal under the equity theory advanced by Campbell, the family court had the discretion not to deviate from the guidelines. Under the totality of the circumstances of this case, we find it did not abuse its discretion.

Expert Witness Fees
Campbell contends the family court's award of expert witness fees should be reduced from $2,500 to $300 and from $300 to $30. Authority for fixing expert witness fees is found in LSA-R.S. 13:3666. Generally, the amount and fixing of expert fees lies within the sound discretion of the trial court and will not be disturbed in the absence of an abuse of discretion. See LSA-C.C.P. art.1920; Autin's Cajun Joint Venture v. Kroger Company, 93-0320 (La.App. 1st Cir. 2/16/94), 637 So.2d 538, 544, writ denied, 94-0674 (La.4/29/94), 638 So.2d 224; Albin v. Illinois Central Gulf Railroad Company, 607 So.2d 844, 845 (La.App. 1st Cir. 1992). Factors to be considered by the trial judge in setting an expert witness fee include the time spent testifying, time spent in preparatory work for trial, time spent away *323 from regular duties while waiting to testify, the extent and nature of the work performed, and the knowledge, attainments and skill of the expert. Albin v. Illinois Central Gulf Railroad Company, 607 So.2d at 845. Additional considerations include helpfulness of the expert's report and testimony to the trial court, the amount in controversy, the complexity of the problem addressed by the expert, and awards to experts in similar cases. Id. at 845-846. Most importantly, expert witnesses are entitled only to reasonable compensation. Id. at 846. The amount agreed upon between an expert witness and the party calling him is not the criterion to be used by the court in assessing expert fees. Id.
Michael Burris, Womack's expert certified public account, was awarded $2,500 in expert witness fees. Mr. Burris testified that he had spent 32.75 hours in preparing for and participating in the trial of this matter. Of his 32.75 billable hours, 24.75 hours was spent preparing for trial. The eight remaining hours were billed for the day he spent in court of which several were spent testifying. At his hourly rate of $80, his fee would have been $2,620.
Henry Charles Silvio, Campbell's expert certified public account, was also awarded $2,500 in expert witness fees, despite the absence of evidence concerning the time spent on this matter and his hourly rate. Womack submitted in his brief that both certified public accountants engaged in a time-consuming analysis of financial records. Based on the nature of the evidence presented, there was a reasonable basis for the family court's apparent conclusion that Mr. Silvio obviously spent many hours preparing for trial (probably just as many as Mr. Burris) in addition to the hours spent in court and testifying at trial. Considering the above factors, this court concludes the family court did not abuse its discretion in awarding $2,500 in expert witness fees to these accountants.[11]
Campbell also challenged the expert witness fee of $300 awarded to Jean Hayes, Caroline's tutor, who testified at trial as an expert for less than one hour. Womack did not introduce an affidavit or invoice pertaining to the time Ms. Hayes spent in preparing for and testifying at trial, nor did any of her testimony relate to this particular issue. In relation to her work as Caroline's tutor, Ms. Hayes charged an hourly rate of $10. In addition to appearing and testifying at the September 15, 1994, hearing, she was present to testify at the March and April 1995 hearings, but did not get to testify. The family court obviously relied on her testimony in determining that the children, especially Caroline, had a particular educational need to attend private school. Therefore, we find the amount assessed for this expert was within the family court's discretion.

Conclusion
For the foregoing reasons, the family court's judgment is affirmed. Costs of this appeal are assessed to Craig Campbell.
AFFIRMED.
NOTES
[1] This court in Phillips v. Phillips, 569 So.2d 127 (La.App. 1st Cir.1990), recognized the enactment of LSA-R.S. 9:311 (added by 1985 La. Acts No. 41, § 1), which provided that an award of support shall not be modified unless a "change in circumstances" is shown, has given rise to the question of whether the legislature intended to depart from prior jurisprudence which held that a "substantial" change in circumstances was required. Since there were factors in Phillips v. Phillips that mitigated against the reduction of child support even though a change in circumstances was shown, this court declined to resolve this issue.

The second circuit has decided that the nonuse of the term substantial in the 1985 enactment of LSA-R.S. 9:311 did not signal a legislative intent to lessen the standard, which would promote instability in child support matters by inviting frequent relitigation. Norris v. Norris, 604 So.2d 107, 116 (La.App. 2nd Cir.1992); Crowder v. Crowder, 595 So.2d 810, 811 (La.App. 2nd Cir.), writ denied, 598 So.2d 358 (La.1992).
Without addressing this issue directly, this court in Richardson v. Richardson, 590 So.2d 1302, 1304 (La.App. 1st Cir.1991), which involved a 1987 motion for an increase in child support, required the mother who sought the modification to show a "substantial" change in circumstances.
[2] Under the facts of this case, the gross income is equivalent to the adjusted gross income. See LSA-R.S. 9:315(1).
[3] Although Womack was not employed at the time of this proceeding, her monthly income was stipulated to be $1,060.80.
[4] In addition to the income items used by his expert in calculating his gross income, Campbell (in his brief) suggested that his gross income calculation should include $760 he received in real estate commissions and $270 he received in stock dividends, thus producing a gross income figure of $50,801.
[5] The family court's finding comports with LSA-R.S. 9:315(4)(c) and prior jurisprudence holding that a parent cannot avoid all or part of his child support obligations by exercising his exclusive control over a corporation wholly owned by him to limit his own salary. Moncus v. Moncus, 510 So.2d 1271, 1276 (La.App. 3rd Cir.), writ denied, 514 So.2d 462 (La.1987).
[6] The family court obviously found that attendance at the private school was necessary to satisfy the particular educational needs of William and Caroline warranting an adjustment to the basic child support obligation.
[7] LSA-R.S. 9:315.6(1) does not require a finding of "extraordinary" need, "unusual" need or even a "special" need but only a finding of a "particular" need of the child. Schulz v. Schulz, 630 So.2d at 850.
[8] Many of the reported cases finding a particular educational need to attend a private school involved a history of attendance at a private school prior to the hearing on this issue. See, e.g., Buchert v. Buchert, 93-1819 at 12-13, 642 So.2d at 307-308; Bertrand v. Bertrand, 637 So.2d at 533-534; Settle v. Settle, 25,643 (La.App. 2nd Cir. 3/30/94), 635 So.2d 456, 464, writ denied, 94-1340 (La.9/16/94), 642 So.2d 194; Schulz v. Schulz, 630 So.2d at 850; Widman v. Widman, 619 So.2d 632, 637 (La.App. 3rd Cir.1993); Dempsey v. Stevens, 611 So.2d at 817-818; Corley v. Corley, 600 So.2d at 909.
[9] If their future academic performance proves this determination to be erroneous, then the family court has continuing jurisdiction to modify this decision.
[10] Absent such proof, it is unnecessary for this court to determine if the rental value of this house was "income" to the children that can be used to reduce the basic needs of the children. See LSA-R.S. 9:315(6).
[11] If Campbell believes this award is excessive as to his own witness, certainly he is in a position to negotiate a reduction with him.