665 So.2d 625 (1995)
STATE of Louisiana, in the Interest of Claire TRAVERS, Clay Travers, Caleb Travers, Minor Children of Carrie Travers, Plaintiff-Appellant,
v.
Clarence W. TRAVERS, Defendant-Appellee.
No. 28022-JA.
Court of Appeal of Louisiana, Second Circuit.
December 6, 1995.
*626 Paul J. Carmouche, District Attorney, Mary S. Cowles, Assistant District Attorney, Support Enforcement Division, Shreveport, for Appellant.
Clarence W. Travers, In Proper Person.
Before MARVIN and BROWN, JJ., and SAVOIE, J. Pro Tem.
SAVOIE, Judge Pro Tem.
The Support Enforcement Services branch of the State Department of Health and Human Resources (the Department) appeals from the judgment of the juvenile court fixing the amount of the child support obligation of Clarence W. Travers. For the following reasons, we affirm.

FACTS
Clarence W. Travers and Carrie Travers were married on March 26, 1980. Three children were born of the marriageClaire Travers, Clay Travers and Caleb Travers. Mr. and Mrs. Travers divorced on September 29, 1993, and the district court granted the Travers' joint custody of the children. The children were to be domiciled at Mr. Travers' home from 7:30 A.M. Friday until 7:30 A.M. Monday and at Ms. Travers' home the remainder of the week. The court fixed Mr. Travers' child support obligation at $500.00 per month plus the costs of the children's medical insurance; costs of the children's dental insurance were imposed on Ms. Travers.
Pursuant to Ms. Travers' request, the Caddo Parish District Attorney's office filed a rule for child support in Caddo Juvenile Court in February 1995. See LSA-Ch.C. Art. 311; LSA-R.S. 46:236.1(F); State in Interest of P.M.I. v. Irion, 25,838 (La.App. 2 Cir. 1/19/94), 631 So.2d 28. The juvenile court hearing officer found that the Travers' combined monthly income was $5,797.50 and that Mr. Travers earned 65% of this amount. The hearing officer calculated the basic support obligation to be $1,575.00 per month, the sum of the guidelines schedule amount of $1,504.00 and the medical insurance payment of $71.00. The hearing officer then calculated Mr. Travers support obligation to be $952.75 per month.
Considering the amount of time the children spend with Mr. Travers, the hearing officer recommended that Mr. Travers pay child support in the amount of $725 per month plus a 5 percent administrative fee. See LSA-R.S. 46:236.5(B)(1) and (C). Mr. Travers filed an exception to the findings of the hearing officer, and the juvenile court held a hearing on the matter. LSA-R.S. 46:236.5(C)(6).
The juvenile court rejected the recommendation of the hearing officer. The court found that Mr. Travers earned 66% of the parties' combined monthly income of $5,797.50 and calculated the basic support obligation to be $1,504.55. The court then noted that the children spent 43% of their time with Mr. Travers and reasoned that he owed only the residual 57% of his 66% of the support obligation. The court calculated Mr. *627 Travers' monthly child support obligation to be $674.91, the sum of $566.01 (57% of 66% of $1,504.55) and $108.90 (Mr. Travers' 66% share of the children's dental coverage and tuition). Using a similar calculation, the court found that Mrs. Travers' monthly child support obligation was $244.11, the sum of $219.97 (43% of 34% of $1,504.55) and $24.14 (her 34% share of the children's medical coverage). Thus, Mr. Travers' monthly child support obligation was $430.80 (the difference of $566.01 and $244.11) plus the 5% administrative fee.
The court found that this amount was not in the best interest of the children because it did not take into account the expenses incurred from the parents' maintenance of two households. See LSA-R.S. 9:315.1(B); Nixon v. Nixon, 25,481 (La.App.2d Cir. 01/19/94), 631 So.2d 42. To compensate for this cost, the court recalculated the basic support obligation as $2,021.75, the guidelines-stipulated sum of the obligations of two households, each with "one and one-half" children, earning a total of $5,797.50. Using the $2,021.75 figure as the basic support obligation instead of $1,504.55, the court calculated that Mr. Travers owed $549.76 per month.
However, the court found that this amount was not equitable to Ms. Travers because, under the facts adduced at the hearing, a disproportionate amount of the childrens' expenses fell on weekdays when the children were domiciled with her. The court calculated that the disproportionate expenses amounted to $200.00 per child per year ($600.00 or $50.00 per month) and added $33.00 per month (66% of $50.00) to Mr. Travers' obligation, giving him a total obligation of $582.76 per month. The court entered judgment directing Mr. Travers to pay this amount plus a 5% administrative fee, for a total of $611.90 per month.
From this judgment, the Department appeals. The Department argues that the juvenile court erred in its method of calculating Mr. Travers' support obligation and that his monthly obligation should be considerably higher.

DISCUSSION
The question presented by this appeal is whether the juvenile court abused its discretion by its method of apportioning responsibility for child support between the co-domiciliary parents. We answer the question in the negative.
Calculation of the Basic Obligation
The Louisiana Child Support Guidelines are the framework within which the obligation of child support must be administered. See LSA-C.C. Arts. 227-231; LSA-R.S. 9:315 et seq. The Guidelines are intended to fairly apportion between the parents their mutual financial responsibility for their children. Among the goals for this system were adequacy, consistency and efficiency in support awards. See Blakesley, Louisiana Family LawChild Support, 52 La.L.Rev. 607, 609-610 (1992). Toward those ends, the Guidelines balance the needs of the children with the means available to the parents.
The Guidelines stipulate that the nondomiciliary parent owes his or her portion of the total support obligation to the parent with domiciliary custody. LSA-R.S. 9:315.8(D). The obligation is so directed because it is assumed that the party with domiciliary custody will bear most of the costs of raising the children. However, some custody arrangements pose more complex support problems. LSA-R.S. 9:315.8(E) provides:
In cases of joint custody, the court shall consider the period of time spent by the child with the nondomiciliary party as a basis for adjustment to the amount of child support to be paid during that period of time. The court shall include in its consideration the continuing expenses of the domiciliary party. (Emphasis added.)
Where the children spend a great deal of time with both parents, the calculation of their support must take into account several additional factors.
For example, in Nixon, supra, this court considered the proper apportionment of child support where each parent had domiciliary custody of one child. We concluded that the most equitable solution, considering the needs of the children and the means of the *628 parents, was to combine the parents' incomes and then to calculate each parent's obligation based on the number of children in their home. This method gives each parent credit for the child domiciled with them but ensures (via the Guidelines) that none of the children suffer a reduction in economic support. Further, it is simple to apply consistently.
In the instant case, the juvenile court's calculation of the basic obligation accomplishes a similar result. Co-domiciliary parents, by definition, maintain two homes for their children. Particularly when the children spend their time nearly equally between the residences, their needs and expenses will often exceed those contemplated by the Guidelines. However, it would be inequitable to the parents to calculate the support obligation by treating both parents as sole domiciliary custodians of all the children because of the expenses one parent saves during the time the children live with the other parent. Some compromise must be struck.
The juvenile court found, and we cannot disagree, that the mechanical application of the guidelines in this case would not be in the best interest of the children and would be inequitable to Ms. Travers because of the extra expense created by the Travers' dual households. As the court demonstrated in this case, sometimes the required balance may be achieved by a Guidelines-based calculation using the parties' aggregate gross income but treating each co-domiciliary parent as a separate household with custody of half of the children. When these 2 amounts are combined, the resulting basic support obligation reflects both the additional costs of separate homes and the savings from discontinuous custody. Moreover, it produces a consistent and mathematically certain result which comports with the Guidelines. This is not to say, however, that this "dual-household" method is necessary or even appropriate in all co-domiciliary cases; it is merely not an abuse of discretion to so calculate in the appropriate case. LSA-R.S. 9:315.1(B). A more unequal division of domiciliary custody, for example, might render the dualhousehold method inequitable. Further, if the court finds that no deviation from the Guidelines is appropriate under LSA-R.S. 9:315.1(B), it should use the standard calculation.
Credit for Domiciliary Time
In addition to the parties' continuing expenses, the Guidelines require the court to consider the effect on the support obligation of the time the children spend with each parent. LSA-R.S. 9:315.8(E). In some cases, where that time is limited and the evidence shows that the nondomiciliary parent makes no important contribution to the children's needs, the court need not reduce the Guidelines-stipulated award. Temple v. Temple, 94-1244 (La.App. 3rd. Cir. 03/01/95), 651 So.2d 466.
On the other hand, the custodial arrangement may place nearly equal financial burdens on both parents. This situation is most apparent in joint custody cases where each parent satisfies many of the child's needs. For example, in Brazan v. Brazan, 93-2369 (La.App. 1st Cir. 06/24/94), 638 So.2d 1176, the court reduced by half the Guidelines-calculated support obligation of a father who had custody of his son 50% of the time. In Brazan, the father earned 87% of the parties' combined income and agreed to pay for his child's day care and medical insurance.
In the instant case, the parties were unable to agree on any aspect of their financial responsibility for the children. At the hearings, the parents presented contradictory evidence of the amounts of and need for the expenses they incurred while they had the children, including hair care, field trips, clothing and tuition. We do not believe that, under these circumstances, the trial court erred by apportioning responsibility for support proportionately with the time the children spent with each parent.
LSA-C.C. Arts. 233 and 234 contemplate that a parent's obligation to support his child may be satisfied by either the payment of money or the actual provision of support. This theme is repeated in LSA-R.S. 9:315.8(E). See also Ducote v. Ducote, 339 So.2d 835 (La.1976); Schelldorf v. Schelldorf, 568 So.2d 168 (La.App. 2d Cir.1990); LeFebvre v. LeFebvre, 589 So.2d 66 (La.App. 1st. Cir.1991); Clooney v. Clooney, 446 So.2d *629 981 (La.App. 3rd. Cir.1984); Neel v. Neel, 365 So.2d 34 (La.App. 4th. Cir.1978). Where the evidence reflects no unusual circumstances, it is not an abuse of discretion to reduce the support obligation in proportion to the time the children spend with each parent.
In this case, the juvenile court found unusual circumstances justifying the increase of the support award paid by Mr. Travers from this amount. The court increased the award by $33.00 per month to compensate for the disproportionate level of expenses shared by Ms. Travers during the week. While not universal, this is a common situation and the court's finding is supported generally by the evidence.

CONCLUSION
Because the evidence supports the findings and rationale of the juvenile court, we hold that the court did not abuse its wide discretion in fixing the amount of Clarence Travers' child support obligation. Costs of this appeal are assessed to appellants.
AFFIRMED.