794 So.2d 854 (2000)
Kay Dick TATUM, Plaintiff-Appellant,
v.
Gary Mark TATUM, Defendant-Appellee.
No. 33,118-CA.
Court of Appeal of Louisiana, Second Circuit.
May 15, 2000.
Rehearing Denied June 15, 2000.
*856 Harvetta S. Colvin, Shreveport, Counsel for Appellant.
Sockrider, Bolin, Anglin & Batte by H.F. Sockrider, Jr., D. Rex Anglin, Shreveport, Counsel for Appellee.
Before BROWN, GASKINS and PEATROSS, JJ.
BROWN, Judge.
Several rules filed by the parties in November and December of 1996 were consolidated and tried in January 1999. Defendant's 1997 rule to reduce child support had been bifurcated and was heard the day following the conclusion of the trial of the other rules. A complicated judgment was rendered in defendant's favor on all issues, including an attorney's fee award in the amount of $29,366.28. For the following reasons, we affirm in part, reverse in part, amend in part, and, as amended, affirm.

Facts and Procedural Background
Plaintiff, Kay Dick Tatum (now Mattox) and defendant, Gary Mark Tatum, were married on February 20, 1988. They had three children, Katie, who was born in September 1988, and twins, Tyler and Taylor, who were born in June 1991. Thereafter, on February 2, 1995, plaintiff filed for divorce. Joint custody was awarded with plaintiff being designated as the domiciliary parent. Defendant was given "reasonable" visitation rights. Defendant's monthly child support obligation was originally set at $1,128.37 by a judgment signed on April 10, 1995. Child support was reduced to $967.68 by a judgment signed on November 2, 1995.[1] A judgment of divorce was signed on November 15, 1995, that incorporated a detailed Joint Custody Implementation Plan structured to defendant's work schedule. At that time, the parties believed that defendant's work schedule would not change again until December 1996. The judgment further contemplated that when defendant received his work schedule each December, changes in physical custody/visitation would be made to accommodate his revised work requirements. Although some of the parties' pleadings were harshly worded, all of the above was accomplished by consent.
Unfortunately, in February or March 1996, defendant's work schedule was changed, something neither contemplated nor addressed in November 1995 when the original implementation plan was approved. At that time, defendant gave plaintiff a copy of his revised work schedule and requested that visitation be modified in accordance with that new schedule. Plaintiff refused and demanded that defendant cfollow exactly the plan drafted in 1995.
Defendant's revised work schedule went into effect in April 1996. According to defendant, from that time until October 1996, when the parties met with the trial court for a status conference, he was unable to exercise his visitation rights on most of the dates set forth in the original custody judgment because of his new work schedule. He further claimed that he was denied visits on the dates that overlapped under the old and new work schedules.
Following the October 1996 status conference, defendant began visitation with *857 the children in accordance with his revised work schedule. Although the matter was resolved at the October status meeting, in November 1996, defendant filed a rule for contempt, attorney fees and court costs, asserting that plaintiff was in contempt for refusing to allow him visitation from April until October 1996. An interim order in accordance with the October status conference was rendered and signed on January 14, 1997. At this point, the parties were clear as to the court-ordered dates on which defendant was to have custody of the children and the dispute over scheduling was resolved. No other allegations have been made concerning interference with defendant's physical custody/visitation.
On December 17, 1996, plaintiff filed a rule seeking sole custody or, alternatively, a reduction in defendant's visitation. Plaintiff also asked the court to find defendant in contempt for his failure to pay one-half of the children's medical expenses not covered by insurance.
A year later, in December 1997, defendant filed a motion to reset his rule for contempt. He also filed a rule to decrease child support and for use and occupancy of the former matrimonial domicile. Because plaintiff had moved from the former family home, the trial court granted defendant use and occupancy of the home on April 28, 1998. Trial of the remaining issues did not begin until January 12, 1999 and consisted of 14 days of testimony. On February 17, 1999, the trial court rendered judgment in favor of defendant on all issues except child support which had been bifurcated. Thereafter, on February 22, 1999, the trial court found in favor of defendant on his rule to decrease child support.
Specifically, the trial court found that plaintiff denied defendant visitation as provided by the original custody judgment between April 8, 1996 and October 18, 1996 and found plaintiff to be in contempt for denying/obstructing defendant's visitation during that time period. The trial court also awarded attorney fees to defendant in the amount of $29,366.28 and expert witness fees in the amount of $800.00. As for custody, the trial court found that there was no evidence to support plaintiffs claim that the joint custody arrangement should be modified to one of sole custody. Plaintiffs alternative request for reduction in visitation was, in effect, denied when the court modified defendant's visitation to coincide with his new work schedule. The trial court also found that plaintiff failed to establish her entitlement to reimbursement of uncovered medical expenses allegedly paid on behalf of the children.
The trial court, finding that the parties had custody of the children on a 50/50 basis, granted defendant's rule to reduce child support. The amount was reduced to $321.93 and made retroactive to January 1, 1998. The court further ruled that defendant's monthly obligation of $321.93 would be offset by a $9,044.70 credit for 14 months of retroactive overpayments. The court also ordered defendant's obligation offset by the $29,366.38 attorney's fee award.
A few other miscellaneous matters contained in the judgment are as follows. Plaintiff was ordered to purchase all of the children's clothing and shoes. The trial court found that plaintiff and her husband had violated the sequestration order but deferred sentencing on its adjudication. The court also reserved the right to proceed against the Mattoxes on "constructive contempt, direct contempt, violation of sequestration, perjury and sentencing on the contempt convictions." Finally, the court made its judgment in rem, reserving to defendant the right to bring a revocatory action under La. C.C. art. 2036, et seq., and reserving to the court the *858 right to make a declaration of nullity pursuant to La. C.C. art. 2030 regarding several defense exhibits entered over plaintiffs objection. It is from this judgment that plaintiff has appealed.[2]

Discussion

I. Reduction of Child Support

Modification
An award of child support may be modified if the circumstances of the child or either parent change. La. C.C. art. 142. Specifically, La. R.S. 9:311 provides:
An award for support shall not be reduced or increased unless the party seeking the reduction or increase shows a change in circumstances of one of the parties between the time of the previous award and the time of the motion for modification of the award.
As recently clarified by the supreme court in Stogner v. Stogner, 98-3044 (La.07/07/99), 739 So.2d 762, the party seeking modification need only prove a change of circumstances sufficient to justify an increase or decrease in child support. What constitutes a change in circumstance is determined on a case by case basis and falls within the great discretion of the trial court. Stogner, supra; Rousseau v. Rousseau, 96-502 (La.App. 3d Cir.12/26/96), 685 So.2d 681. Each case will rise or fall on the peculiar facts adduced and an appellate court will not disturb the trial court's decision in these matters absent clear abuse of discretion. Id.
The Louisiana Child Support Guidelines, the framework utilized to bring consistency and uniformity in setting the amount of child support, are intended to fairly apportion between the parents their mutual financial responsibility. State in the Interest of Travers v. Travers, 28,022 (La.App.2d Cir.12/06/95), 665 So.2d 625. The guidelines stipulate that the nondomiciliary parent owes his or her portion of the total support obligation to the parent with domiciliary custody. La. R.S. 9:315.8(D); State in the Interest of Travers, supra. The obligation is so directed because the party with domiciliary custody normally provides housing, food, clothing and the necessities involved in raising the children. Id. Some custody arrangements, however, pose more complex support problems. La. R.S. 9:315.8(E) provides:
In cases of joint custody, the court shall consider the period of time spent by the child with the nondomiciliary party as a basis for adjustment to the amount of child support to be paid during that period of time. The court shall include in its consideration the continuing expenses of the domiciliary party.
In the instant case, as noted by defendant, at the time that his support was set at $967.38 per month, he had only "reasonable" visitation and the children were with plaintiff most of the time. Several months after this judgment, however, the current custody arrangement, in which the children spend equal time with both parents, was implemented. We agree with the trial court that this is a change in circumstances *859 which could warrant modification of defendant's support obligation. See State in the Interest of Travers, supra; Nixon v. Nixon, 25,481 (La.App.2d Cir.01/19/94), 631 So.2d 42; Brazan v. Brazan, 93-2369 (La.App. 1st Cir.06/24/94), 638 So.2d 1176.
The trial court correctly calculated the parties' combined adjusted monthly gross income as $6,381.85. The court, however, erroneously found that the total support obligation for three children given this level of income was $1,623. Instead, the guidelines provide for a monthly support obligation of $1,605. From here on out, we will recalculate the trial court's figures as if it had used the correct amount of $1,605. After adding in the cost of medical insurance, which is paid by defendant, the total support amount is $1,630.68. Defendant's proportionate share of this amount is $945.79 (58% × $1,630.68). We deduct the amount he pays for insurance, $25.68, for a monthly support obligation of $920.11.
The trial court ordered plaintiff to bear all the cost for the children's clothing and shoes. The trial court then designated 25% of the total monthly support obligation ($1,630.68) for clothing and shoes, $407.67, and ordered defendant to pay his proportionate share, 58% × $407.67 = $236.45 per month, as a continuing expense of the domiciliary parent. The court then subtracted this amount from defendant's monthly obligation, $920.11 less $236.45 = $683.66, and divided this figure by one-half, for a total of $341.83. Adding back in the amount set aside for clothing, $236.25, defendant's adjusted monthly support obligation would be $578.28.[3] We note that this amount is $341.83 less than defendant's monthly obligation suggested by the guidelines.
As noted by this court in State in the Interest of Travers, supra, co-domiciliary parents, by definition, maintain two homes for their children. Furthermore, when the children spend their time nearly equally between the residences, their needs and expenses will often exceed those contemplated by the guidelines. Id. Under the facts and circumstances of this case, we do not find that the trial court erred by reducing defendant's monthly support obligation proportionately to account for the substantial amount of time that the children spend with him. See Guillot v. Munn, 97-1431 (La.App. 1st Cir.06/25/99), 740 So.2d 205. Because the ultimate amount as calculated by the trial court is in error, however, we will amend the judgment to reflect defendant's monthly support obligation as $578.28.

Retroactivity of Reduction
Plaintiff contends that the trial court erred in making the reduction retroactive to the date that defendant filed his rule to decrease child support.
Except for good cause shown, a judgment modifying a child support judgment shall be retroactive to the date of judicial demand. La. R.S. 9:315.21; Welborne v. Welborne, 29,479 (La.App.2d Cir.05/07/97), 694 So.2d 578, writs denied, 97-1800, 97-1850 (La.10/13/97), 703 So.2d 621, 623; Cupstid v. Cupstid, 97-2392 (La.App. 4th Cir.11/10/98), 724 So.2d 238; Farris v. Farris, 95-1275 (La.App. 3d Cir.05/01/96), 673 So.2d 1276.
The burden is not on the claimant spouse, defendant in this case, to demonstrate such "good cause," but rather the burden is on plaintiff, the defendant in rule, to show good cause for not making *860 the award retroactive to the date of judicial demand. Welborne, supra; Cupstid, supra; Broussard v. Broussard, 532 So.2d 281 (La.App. 3d Cir.1988).
The trial court is vested with considerable discretion in determining whether good cause exists not to make an award retroactive. Holdsworth v. Holdsworth, 621 So.2d 71 (La.App. 2d Cir.1993); Lloyd v. Lloyd, 94-0421 (La.App. 1st Cir.12/22/94), 649 So.2d 32.
A review of the record demonstrates that the 50/50 physical custody arrangement started in December 1995. An October 1996 status conference settled physical custody/visitation disputes. Defendant's rule to modify or reduce child support was filed in December 1997. The trial did not occur, however, until February 1999. We note that included with the rule to reduce support filed in December 1997 was a request by defendant for the use and occupancy of the former matrimonial home. That rule was heard and disposed of in April 1998 while its companion rule to reduce child support was continued by joint motion without explanation.
In some cases, an unreasonable delay in bringing the rule to trial may make retroactive application unjust. Under the particular circumstances of this case, we cannot say that the trial court abused its discretion in its retroactive application of the reduction.

II. Contempt and Modification of Custody/Visitation Rules
The events which form the basis for defendant's rule for contempt, plaintiff's denial of his court-ordered visitation rights, occurred when his work schedule changed, something neither contemplated nor provided for in the original custody arrangement. The six month period of time during which defendant was unable to exercise his visitation rights (largely due to his new work schedule) was April through early October 1996. Rather than seeking immediate legal redress to enforce his visitation, defendant waited until after a status conference during which the confusion over his visitation schedule was cleared up.[4] A month after the status conference, defendant filed his rule for contempt. Had this rule been heard shortly thereafter, within a reasonable period of time, we may well have upheld an appropriate attorney's fee award.
As it stands, however, defendant's contempt rule was continued without explanation not once but several times pursuant to joint motions. In the meantime, the parties had no further conflicts regarding visitation; in fact, they both stated that they were finally communicating about the children and that the schedule implemented by the court at the October 1996 status conference seemed to be working. The hearing finally occurred in January 1999, more than two years after filing, and used 14 trial days.
Plaintiff also filed a rule in December 1996 to modify custody/visitation. Although her pleadings sought modification of the custody arrangement from joint to sole custody, basically, plaintiff's goal was the limitation of defendant's visitation with the children to weekends. According to plaintiff, continuity in care during the school week would result in consistency in the children's schedules and behavior. In fact, the entire case put on by plaintiff on this issue concerned her allegation that the *861 custody arrangement, which was essentially 50/50, was disruptive and confusing to the children and caused the kids, primarily Katie, the oldest, to miss activities that plaintiff had scheduled for her.
This rule was consolidated for trial with defendant's contempt rule. Commenting on plaintiffs rule, the trial court said, "the parties have lived under [the interim order following the October 1996 status conference] for, what, two years continuously and it sounds like, to me, over the last two years essentially problem-free." This statement applies equally to defendant's contempt rule concerning visitation. At trial, plaintiff admitted that the schedule was in the children's best interest, noting that she did not "keep up with her calendars as much now because Mark (defendant) picks the children up when he's supposed to and I don't document every time he calls or every time the children call because now he's, you know, showing up and showing some concern." Defendant noted that communication between the parties was much improved as of trial and that since the October 1996 status conference there had been no problems whatsoever with visitation.
In the final analysis, 14 days were spent on stale rules which raised matters no longer important or necessary. To affirm the trial court's contempt ruling against plaintiff and award of almost $30,000 in attorney fees would in essence reward defendant for his continued participation in prolonging the post-marital discord and would send a message to other parents in similar situations that, rather than working through their differences in a timely manner, parties should "hold on" to issues which have either worked themselves out or are no longer viable.
We emphasize, however, that had the trial court found in plaintiffs favor on this issue, we would not uphold an award of attorney fees to her either. As found by the trial court, she also played a big part in "keeping the pot stirred up". We feel that equity demands that each party bear the costs of their own legal representation. Additionally, plaintiffs contempt rule for defendant's alleged failure to pay his part of uncovered medical expenses was properly rejected by the trial court. This rule, filed in 1996, was also not tried until 1999 and had been resolved.
With this opinion the other matters at issue are now moot.

Conclusion
For the reasons set forth above, the judgment of the trial court reducing defendant's child support is amended to correct errors in math and, as amended, affirmed as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of GARY MARK TATUM and against KAY DICK TATUM MATTOX reducing his child support obligation to her to the sum of $578.28 per month, retroactive to January 1, 1998, subject to a credit for overpayments by him to her since that time, said credits to be applied in the amount of $100 per month. All of the children's clothes and shoes are to be purchased by KAY DICK TATUM MATTOX. The parent with whom the children spend the night before a school day shall be responsible for providing or paying for the children's school lunches that day. GARY MARK TATUM is to pay for and maintain health and major medical insurance on the children through his employer and is responsible for 58% of the cost of uncovered medical expenses.
The trial court's judgment finding plaintiff, KAY DICK TATUM MATTOX, in contempt for interfering with visitation is reversed. All ancillary matters related thereto, including the award of attorney *862 fees and expert witness costs, violation of sequestration order, making the judgment in rem, reserving to defendant the right to bring a revocatory action and the court's reservation to make a declaration of nullity, are likewise reversed.
In all other respects the trial court's judgment is affirmed. All costs, both here and below, including expert witness fees, are assessed equally to plaintiff and defendant.
NOTES
[1] Both judgments ordered defendant to pay one-half of all uncovered medical, dental and prescription drug expenses.
[2] Plaintiff contends that she was denied a fair trial and cites numerous examples which she contends demonstrate the prejudicial nature of the trial and the violation of her right to due process. In particular, she claims that the trial court abused its discretion by its often adversarial questions and comments.

As noted by this court in Midyett v. Midyett, 32,208 (La.App.2d Cir.09/22/99), 744 So.2d 669, in order to adjudicate a matter fairly, the trial court may initiate questions from the bench. In asking a witness questions from the bench, the trial judge must remain impartial and must not become an "advocate" for one side or the other. Id. at 675. The record does not reflect evidence of an abuse of this discretion nor of any obvious partiality by the trial court.
[3] The trial court failed to add back the $236.25 representing defendant's share of the clothing expenses that plaintiff was ordered to pay.
[4] In brief, defendant's counsel writes: "This situation existed until October 1996 when (defendant's attorney) was finally successful in obtaining a status conference with (plaintiff's) new attorney and the presiding judge." This hardly explains why a rule was not filed in a timely manner.