# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 04-1332


PATRICK MURPHY

VERSUS

SUSAN LYNN MURPHY


**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2002-1792
HONORABLE GUY E. BRADBERRY, DISTRICT JUDGE

**********

**MARC T. AMY**
**JUDGE**

**********

Court composed of John D. Saunders, Marc T. Amy, and Michael G. Sullivan, Judges.

**AFFIRMED.**

**M. Steven Beverung**
**Book and Beverung**
**620 Esplanade Street, Suite 103**
**Lake Charles, LA 70607-6363**
**(337) 478-8706**
**COUNSEL FOR DEFENDANT/APPELLANT:**
   **Susan Lynn Murphy**

**Walter M. Sanchez**
**Lorenzi & Sanchez, L.L.P.**
**518 Pujo Street**
**Post Office Box 3305**
**Lake Charles, LA 70602-3305**
**(337) 436-8401**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
   **Patrick Murphy**

AMY, Judge.

This matter concerns the appeal of a final child support judgment by the mother, who is the domiciliary parent. The final judgment decreased the interim support amount and was made retroactive to the date of the filing of the original petition. The mother appeals both rulings, as well as the district court's deviation from the child support guidelines to account for time spent by the father with the child. For the following reasons, we affirm.

## Factual and Procedural Background

The parties in this case, Patrick Murphy and Susan Book Murphy, were married in Calcasieu Parish on July 12, 1997. Patrick works for his father's corporation, Black Lake Marsh, Inc. He is also the sole owner of his own corporation, Gulf Coast Nursery Supply, Inc. Susan is the sole proprietor of her own business, a gift shop named Expressions. One child was born of the marriage on July 13, 2000. Patrick filed suit for divorce on April 8, 2002; Susan also filed a divorce suit on April 9, 2002. Following a conference, the trial court entered an order on August 9, 2002 setting child support at $969.51 per month. A judgment of divorce was granted on April 17, 2003. The parties stipulated to a joint custody plan[1] and submitted economic data to the court relating to child support. The trial court rendered a judgment on January 6, 2004, reducing the monthly child support to $508.00 per month, retroactive to the date of filing on April 8, 2002. The judgment was signed on June 24, 2004 and the plaintiff filed the instant appeal,[2] alleging the following as error:

_____

[1] We note that, although the parties agreed to a visitation schedule, the trial court held proceedings and rendered a judgment regarding the issue of unsupervised visitation with Jordan's paternal grandfather. This ruling was appealed to this court separately. *See Murphy v. Murphy*, 04-1053 (La.App. 3 Cir. 12/8/04), __ So.2d __.

[2] Because each of the parties filed a petition of divorce, this matter proceeded to this court under two docket numbers. For decretal information in the companion case, see *Murphy v. Murphy*, 04-1333 (La.App. 3 Cir. _/_/05), __ So.2d __.

1. The trial court was manifestly erroneous in reducing the recommended child support from $969.51 per month to $508.00 per month.

2. The trial court erred in deviating from the guidelines of La. R.S. 9:315 by allowing a credit for time the child spent with the non-domiciliary parent.

3. The trial court was manifestly erroneous in making the change in child support rendered in 2004 retroactive to the filing of the suit in 2002.

## Discussion

*Standard of review*

The trial court has great discretion in determining the amount of a child support award, and that determination should not be disturbed by an appellate court unless the trial court has committed a clear abuse of discretion or manifest error in factual appreciations. *Gautreau v. Gautreau*, 96-1548 (La.App. 3 Cir. 6/18/97), 697 So.2d 1339, *writ denied*, 97-1939 (La. 11/7/97), 703 So.2d 1272; *Widman v. Widman*, 96-613 (La.App. 3 Cir. 2/2/94), 631 So.2d 689.

*Child Support Reduction*

For her first assignment of error, Susan asserts that the district court erred in reducing Patrick's monthly child support payments from $969.51 to $508.00. She suggests that the figure used by the trial court in calculating the final support amount did not include income Patrick allegedly receives from other sources.

The worksheet attached to the hearing officer's second recommendation, which was used as the basis for the support amount at issue, states that Patrick's gross monthly income is $1500 and Susan's is $893. The comments at the bottom of the worksheet state, "Fathers [sic] Income Taken From Est. Mo. gross. Min. Wage Imputed to Mother."

2

The record contains a letter submitted by Patrick's attorney dated November 24, 2003, and an attached worksheet which states that Patrick's average monthly income for the years 2001 through 2003 was $1,388.00. This figure includes his wages from Black Lake Marsh, which were $9,600 for the years of 2001 and 2002, and only approximately $720.00 per month for 2003. Therefore, the letter and worksheet imputed the minimum wage of $900.00 per month to Patrick for 2003. The letter and worksheet also included in the gross income an annual payment of $7,440.00 for seismographic and oil exploration activities on property owned by Patrick. The letter and worksheet impute the minimum wage, or $900.00 monthly gross income, to Susan. The record also contains an expense and income affidavit that was submitted by Patrick which states that his adjusted gross monthly income is $1,574.05.

Susan asserts in her appellate brief that Patrick's gross income should be calculated using the figures from tax returns for the years 1999 through 2003, which appear in the record. However, the child support calculation statutes do not require the trial court to ascertain the child support obligation using figures dating approximately four years prior to the court's judgment. While the statutes also do not prohibit the use of such figures, it is within a trial court's broad discretion to determine which figures are proper to calculate the amount of Patrick's monthly gross income. *Templeton v. Templeton,* 00-536 (La.App. 1 Cir. 12/22/00), 774 So.2d 1257. "The determination of the amount of [a parent's] gross monthly income is a finding of fact subject to manifest error review, and one which cannot be set aside by a reviewing court unless it is clearly wrong or manifestly erroneous." *Piccone v. Piccone*, 01-1086, p. 5 (La.App. 3 Cir. 5/22/02) 824 So.2d 427, 430.

The record contains numerous documents with various representations relating to the parties' incomes, including depositions by each party and their accountant, tax records, affidavits, and other documents. Although the trial court did not describe in detail which figures were used in calculating the amount of Patrick's monthly gross income, its determination is supported by the tax returns and payroll records which appear in the record. The trial court was not clearly wrong in making a finding of fact that Patrick's gross monthly income was $1,500.00. Neither was the trial court required to accept the assertion that Patrick was under-reporting his income based upon the evidence presented. Thus, this assignment is without merit.

*Adjustment of Child Support Obligation Based on Time Spent with Child*

For her next assignment, the defendant asserts that the trial court erred in reducing Patrick's monthly child support obligation by one-twelfth on account of the amount of time Patrick has physical custody of the child. Susan argues in her appellate brief that the reduction amounted to a deviation from the child support guidelines, which she states is subject to the test outlined by the Louisiana Supreme Court in *Guillot v. Munn*, 99-2132 (La. 3/24/00), 756 So.2d 290. Susan further cites *Guillot,* as well as La.R.S. 9:315.1, for the proposition that the trial court is required to provide specific reasons, either orally or written, for a deviation.

Considering the argument that a deviation was justified based on the amount of time that the non-domiciliary parent had physical custody of the child, the *Guillot* court created a three-pronged test for determining the sufficiency of a deviation in such a circumstance. First, the court must determine whether the visitation at issue goes beyond a "typical" amount of time, creating an extraordinary visitation that would warrant deviation. *Id.* Second, the court must ascertain whether the increased custody causes the non-domiciliary parent increased financial burden, and results in

4

a lesser financial burden on the custodial parent. *Id.* Finally, "the court must determine that the application of the guidelines in the particular case under consideration would not be in the best interest of the child or would be inequitable to the parties." *Id*. at 300.

Louisiana Revised Statutes article 9:315.8, which provides the guidelines for calculating the child support obligation, addresses this issue, stating, in relevant part:

> E. "Joint custody" means a joint custody order that is not shared custody as defined in La.R.S. 9:315.9.
>
> (1) In cases of joint custody, the court shall consider the period of time spent by the child with the nondomiciliary party as a basis for adjustment to the amount of child support to be paid during that period of time.
>
> (2) If under a joint custody order, the person ordered to pay child support has physical custody of the child for more than seventy-three days, the court may order a credit to the child support obligation. A day for the purposes of this Paragraph shall be determined by the court; however, in no instance shall less than four hours of physical custody of the child constitute a day.
>
> (3) In determining the amount of credit to be given, the court shall consider the following:
>
> (a) The amount of time the child spends with the person to whom the credit would be applied.
>
> (b) The increase in financial burden placed on the person to whom the credit would be applied and the decrease in financial burden on the person receiving child support.
>
> (c) The best interests of the child and what is equitable between the parties.
>
> (4) The burden of proof is on the person seeking the credit pursuant to this Subsection.

Comment (b) to La.R.S. 9:315.8 states:

> An adjustment in the form of a credit may be afforded the nondomiciliary parent who has physical custody of the child for more than seventy-three days, the definition of a day to be determined by the

5

court but in no case can a day be less than four hours of physical custody of the child. Physical custody of the child for seventy-three days constitutes physical custody at least twenty percent of the year as a threshold for the discretionary adjustment permitted by this Section. The amendment adds specificity to the meaning of "extraordinary visitation" in Guillot v. Munn, 756 So.2d 290 (La. 2000).

Susan correctly asserts that La.R.S. 9:315.1[3] requires a trial court to specify reasons for a deviation from the child support guidelines. However, the adjustment in this matter is properly reviewed using La.R.S. 9:315.8, which was amended in 2001 to address the effect of time the non-domiciliary parent has custody of the child on the child support obligation. Louisiana Revised Statutes 9:315.8 requires the court, in every case involving joint custody, to consider the amount of time spent by the child with each parent in calculating the obligation amount. The statute then specifically allows for an "adjustment" to the calculation, by allowing a "credit" to be given to a non-domiciliary parent who meets the statute's qualifications. The references to *Guillot* throughout the comments, as well as the incorporation of the three prongs of its test, demonstrate clearly the legislature's awareness of the *Guillot* decision.

In *Guillot,* the Louisiana Supreme court stated that Louisiana's child support guidelines assume a certain, typical level of visitation, and the presumptive force of the guidelines would be undermined if a deviation is allowed where the visitation in question amounts only to the "typical" amount of visitation already contemplated by the guidelines. *Guillot*, 756 So.2d 290. The court held that the allowance of a

---

[3]Louisiana Revised Statutes article 9:315.1 states, in pertinent part:

(B.) The court may deviate from the guidelines set forth in this Part if their application would not be in the best interest of the child or would be inequitable to the parties. The court shall give specific oral or written reasons for the deviation, including a finding as to the amount of support that would have been required under a mechanical application of the guidelines and the particular facts and circumstances that warranted a deviation from the guidelines. The reasons shall be made part of the record of the proceedings.

deviation should only be allowed in situations where that amount of visitation was extraordinary, or non-typical. *Id.*

According to La.R.S. 9:315.8(E)(4), as the parent seeking a deviation, Patrick bears the burden of proving the availability of a credit for time spent with the child. The record reflects that Patrick submitted to the district judge an independent calculation of the child support obligation, which included "a reasonable visitation credit."[4]

The record also contains the parties' stipulation to joint care, custody, and control of the minor child, with Susan designated as the domiciliary parent, subject to the rights of structured visitation of Patrick. The parties also agreed to a visitation schedule which provides for the parents to have the minor child in their custody for a nearly equal amount of time. A chart, which outlines the two-week rotating schedule, was entered into the record; it indicates that the child stays overnight with each parent for seven nights during the cycle and has ten days of contact with each parent. The record also includes a description of a portion of the parties' agreement regarding visitation on holidays. While we do not delineate the specific scheduling of each holiday in this opinion, we note two important aspects of the agreement: first, during the period between Thanksgiving and Christmas, the child will stay with Patrick from Friday night until Saturday evening, and; second, that Patrick has three, five-day "vacation" periods with the child annually.

Based just on the two-week rotating arrangement above, Patrick has physical custody of the child approximately 50% of the time, in addition to the numerous additional overnight holiday and vacation visits we noted above. It is not necessary

---

[4] We note that, although his figures were slightly different than those reached by the trial judge, the credit that Patrick apportioned in his calculation was a one-twelfth reduction from his child support obligation amount.

to evaluate the exact number of "days" as defined by La.R.S. 9:315.8 that Patrick has physical custody of the child, as it is clear that the amount of time he has custody of the child far exceeds the statute's 73-day requirement for consideration for a credit.

Susan points out that the trial court did not recount its consideration of the three prongs of the *Guillot* test, specifically the financial burden a credit would cause the parties and best interest of the child. However, while La.R.S. 9:315.8 requires the court to consider specific factors in determining a credit, the statute does not state that the court's consideration must be reduced to written or oral reasons.

The trial court is vested with wide discretion in determining the amount of child support. *Gautreau v. Gautreau*, 697 So.2d 1339 (La.App. 3 Cir. 6/18/97), *writ denied*, 97-1939 (La. 11/7/97), 703 So.2d 1272. Taking into account the considerable amount of time that Patrick has physical custody of the child, we do not find that the trial court was clearly wrong in awarding him a credit for the joint custodial arrangement of one-twelfth of the amount of his child support obligation. This assignment is without merit.

*Retroactivity of Award*

Patrick made monthly child support payments in the amount of $969.51 pursuant to an August 9, 2002 order by the trial court until the June 24, 2004 judgment, which set Patrick's child support obligation at $508.00 per month. The judgment reducing the monthly child support obligation was made retroactive to the date of the original petition, which was April 8, 2002. Susan suggests that the amount of time between the initial demand for support and the signing of the judgment constitutes "good cause" for not making the judgment retroactive to the date of the original petition. In the alternative, she suggests that the August 9, 2002

8

order amounted to interim support and, as such, the June 24, 2004 judgment should have been prospective.

La.R.S. 9:315.21 governs the effective date of child support judgments, stating in relevant part:

> A. Except for good cause shown, a judgment awarding, modifying, or revoking an interim child support allowance shall be retroactive to the date of judicial demand, but in no case prior to the date of judicial demand.
>
> B. (1) A judgment that initially awards or denies final child support is effective as of the date the judgment is signed and terminates an interim child support allowance as of that date.
>
> (2) If an interim child support allowance award is not in effect on the date of the judgment awarding final child support, the judgment shall be retroactive to the date of judicial demand, except for good cause shown, but in no case prior to the date of judicial demand.
>
> C. Except for good cause shown, a judgment modifying or revoking a final child support judgment shall be retroactive to the date of judicial demand, but in no case prior to the date of judicial demand.
>
> D. Child support of any kind, except that paid pursuant to an interim child support allowance award, provided by the judgment debtor from the date of judicial demand to the date the support judgment is signed, to or on behalf of the child for whom support is ordered, shall be credited to the judgment debtor against the amount of the judgment.
>
> E. In the event that the court finds good cause for not making the award retroactive to the date of judicial demand, the court may fix the date on which the award shall commence, but in no case shall this date be a date prior to the date of judicial demand.

The burden, in this case, is on Susan to demonstrate good cause for not making the award retroactive. *Tatum v. Tatum*, 33,118 (La.App. 2 Cir. 5/15/00) 794 So.2d 854; *Broussard v. Broussard*, 532 So.2d 281(La.App. 3 Cir. 1988). "The trial court is vested with considerable discretion in determining whether good cause exists not to make an award retroactive." *Tatum,* 794 So.2d at 860.

Our review of the record indicates that each party appealed the hearing officer's first child support recommendation, which set the original support amount

of $969.51. The district court entered into the record an order dated August 9, 2002, which states "[i]t is hereby ordered that the Hearing Officer's recommendation as to child support referenced above shall constitute an interim order with which all parties shall comply pending final disposition by the Court, but the interim nature of this award shall not affect the retroactivity of the claims of either party[.]"

Susan argues that the child support obligation relating to the August 9, 2002 order had been prepared by Patrick's attorney, suggesting that the support amount had been determined using Patrick's own figures and representations regarding his income. Our review of the record reveals that the majority of the financial information contained in the record, including the parties' tax records and depositions and information from the parties' accountant, was entered in globo into the record on May 18, 2004, making it impossible for us to surmise which information was available to the hearing officer in 2002.

Finally, we consider Susan's assertion that good cause exists in the instant matter to make the final support judgment prospective, because judgment was rendered in January, 2004, more than a month after the financial information was submitted to the court, and was not signed until June, 2004, which was approximately twenty-six months after the filing of the suit. "In some cases, an unreasonable delay in bringing the rule to trial may make retroactive application unjust." *Tatum*, 794 So.2d at 860. However, in this case, we note that the record clearly demonstrates that the parties were engaged in litigation relating to the divorce and visitation matters throughout the period that the August 9, 2002 order was in effect.

Susan cites jurisprudence in her appellate brief which she states stands for the proposition that it would be unfair to make the child support obligation retroactive where there is an extended length of time between the date of filing and final

judgment. However, it was within the trial court's discretion to use the most recent income figures as a basis for calculating the support obligation. Furthermore, we note that the cases cited by Susan are clearly distinguishable from the instant matter. In *Saucier v. Saucier*, 98-659, p. 12 (La.App. 3 Cir. 10/7/98), 719 So.2d 702, 708, this court found that retroactive application would be unfair where the date of the original judicial demand was more than five years prior to the date of the decision; however, we stated that the "unique (and possibly bizarre) procedural circumstances" of the case made it "fair" to instead set the payments retroactive to a date two-and-a-half years prior to the decision. The two-year delay in the instant matter was due to the parties' litigation, not a complex procedural background as in *Saucier*. The fifth circuit in *Curet v. Curet*, 02-212 (La.App. 5 Cir. 6/26/02), 823 So.2d 971, did find, as Susan alleges, that the father's child support obligation should have been based, not solely on his income figures at the time of the hearing, but on the figures for the time of filing as well. However, in *Curet,* the father had been terminated from his job during the eighteen-month interim period and the mother was attempting to demonstrate that the termination was due to the father's fault in an attempt to become unemployed for the purposes of avoiding child support. Although Susan has made certain allegations with regard to fluctuations in Patrick's income in the instant case, our review of the record does not indicate any evidence, beyond Susan's allegations, of voluntary unemployment or underemployment.

We are also not persuaded by Susan's bare assertion that the five-month interim between the rendering and signing of the child support judgment constitutes good cause against retroactivity. Again, it is within the trial court's discretion to determine whether or not good cause exists. *Tatum*, 794 So.2d 854. Based on the circumstances in this case, we find that the trial court was not clearly wrong in

11

making the final support judgment retroactive to the date of the original petition, April 8, 2002, in accordance with La.R.S. 9:315.21(B)(1). Therefore, this assignment has no merit.

**DECREE**

For the foregoing reasons, the trial court's judgment, setting the child support obligation at $508.00 per month, retroactive to April 8, 2002, is affirmed. All costs of this matter are assigned to the defendant, Susan Murphy.

**AFFIRMED.**