STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

05-1583

WANDA BAZILE

VERSUS

LYNARVAL WASHINGTON

**********
APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 98-5122-A
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE
**********

**GLENN B. GREMILLION**
**JUDGE**

**********

Court composed of John D. Saunders, Glenn B. Gremillion, and Elizabeth A. Pickett, Judges.

**REMANDED.**

**Randal B. Tannehill**
**Tannehill & Sylvester, LLP**
**P. O. Box 3246**
**Pineville, LA 71361-3246**
**(318) 641-1550**
**Counsel for Plaintiff/Appellant:**
**Wanda Bazile**

**Lauren Gay Coleman**
**Coleman & Henderson, LLC**
**5615-D Jackson St. Ext., Suite B**
**Alexandria, LA 71303**
**(318) 449-9857**
**Counsel for Defendant/Appellee:**
**Lynarval Washington**

GREMILLION, Judge.

In this case, the plaintiff, Wanda Bazile, appeals the trial court's judgment ordering that the defendant, Lynarval Washington, pay her $750 per month in child support. For the following reasons, we remand for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

Bazile and Washington have two minor children; one born in 1992, and the other in 1993. A 1998 judgment ordered Washington to pay $200 per month per child ($400 per month) in child support. Bazile filed a Rule to Increase Child Support in November 2004, urging that the needs of the minor children had increased and that Washington's income had increased. Following a hearing in May 2005, a judgment was rendered increasing Washington's child support obligation to $375 per month per child ($750 per month). Bazile now appeals.

Bazile assigns as error:

1. The trial court's failure to include all, or part of, Washington's spouse's income in calculating the child support amount.

2. The trial court's failure to include the value of other benefits that Washington receives from his employment when determining gross income.

3. The trial court's failure to take into account Washington's checking account statements which clearly showed thousands of dollars being deposited into his account on a monthly basis.

4. The trial court's failure to include an $8,000 profit that Washington made on the sale of two pieces of immovable property, when calculating his gross income.

1

5. The trial court failed to indicate in its Reasons for Judgment whether it followed the guidelines for child support set forth in Louisiana law or whether it deviated from the guidelines, and, if so, why that deviation was necessary.

## DISCUSSION

The trial court has great discretion in determining a child support award, and its findings of fact regarding financial matters underlying an award of child support will not be disturbed in the absence of manifest error or a clear abuse of discretion. *McCorvey v. McCorvey*, 05-889 (La.App. 3 Cir. 2/1/06), 922 So.2d 694, *writ denied*, 06-0435 (La.4/28/06), ___ So.2d ___; *Murphy v. Murphy*, 04-1332 (La.App. 3 Cir. 2/2/05), 894 So.2d 542, *writ denied*, 05-0983 (La.11/28/05), 916 So.2d 144..

In its reasons for ruling, the trial court stated:

Upon cursory review, it would appear that Mr. Washington has considerable assets. However, upon a thorough review, one must form the opinion that Mr. Washington is "drowning in debt". For purposes of brevity, this Court will not reiterate all the evidence presented at trial on this matter. This Court will also note that the undersigned has reviewed all exhibits, including a voluminous box of credit card expenses and receipts submitted by Mr. Washington, in pondering this opinion. To reiterate, for purposes of brevity, all evidence and testimony will not be repeated.

If one is to accept Mr. Washington's testimony, he has $5,319.00 in expenses every month, with only $4,000 of income. He indicated that he would "go $1,000.00 in the hole" every month. It does appear that he has some $77,000 in debt. He has taken cash advances from his credit cards, applied to his business.

The evidence adduced at trial was as follows: Bazile testified that she is currently married and her husband earned $29,000 in 2004. She stated that she just began working and earns $5.70 per hour working between forty and forty-five hours per week. Bazile testified that her monthly expenses were as follows: rent $300,

2

electricity $20, car note $292, and car insurance $233. Bazile stated that she did not work from August 2004 through April 2005. Her 2004 tax return showed income of $4,645. She testified that she has one child by her current husband, who was seven years old at the time of trial. She further testified that the highest hourly rate she has ever received was $6.00 per hour.

Washington testified that he has lived in Texas with his current wife for close to three years. He stated that he is the owner and 100% shareholder of a sole proprietorship, Washington Capital Funding, a mortgage broker shop. He testified that he pays himself $2,500 per month and has rental income of $1,500 from three rental units. Washington testified that he rents out the first property for $800 per month, but that the monthly note is $900. The second property rents for $400 with a note of $550 and the third for $300, with a note of $425. He also testified that he and his wife recently purchased the home they reside in for $165,000. Washington then reviewed W-2 forms for the year 2004, in which he reported earnings of $13,843.20 from his company and $39,215.41 from his employment at Novastar Financial Inc.

Washington then discussed a monthly income and expense statement which shows $4,000 in income, but $6,736 worth of monthly expenses. Washington testified that the $1,417 house note is paid by his wife, who is also employed by Washington Capital Funding as a marketing director. He testified that she is salaried and earns $2,500 per month. However, he testified that he and his wife have only one joint account, but that his wife pays the house note with a cashier's check or money order. He testified that she cashes her paychecks and pays the house note from the

3

funds.  He stated that only his checks are deposited into the joint account.  He further stated that he shows no vehicle expenses because his company owns the vehicles that he and his wife drive, including a 2001 Nissan Titan truck with a $616 monthly note and a 2004 BMW 530I with a  monthly note of $963.  Additionally, Washington testified that his wife owns a 2002 Ford Expedition that is paid for, which his family uses for personal business.  Washington Capital Funding also pays the insurance for the vehicles which totals $335 per month.

Washington testified that he had been depositing business funds into his personal checking account through August 2004, when he employed a CPA who advised him to keep business and personal accounts separate.

Washington also testified that he pays $200 per month in child support for a child born prior to the two at issue in this case and that he pays $1,000 a month for tuition and child care for his two children he currently resides with.  Washington stated that he has four credits cards with a balance of about $22,000.  He stated that two are for personal expenses and the other two for business expenses although they are all in his name personally.  He further testified that he has three lines of credit for both business and personal use. He stated that he owes about $55,000 on these accounts.  Washington explained that he has taken several "cash advances" from his lines of credit and credit cards in order to get his business off the ground and, at times, to meet business expenses such as payroll.

We have reviewed the extensive documentary evidence including bank statements and tax returns.  However, there was no evidence of the record of Washington's credit card debt, which was provided after the trial.  Nevertheless, the

4

trial court apparently reviewed documents pertaining to the debt and found them to be accurate.

The crux of Bazile's arguments allege that the trial court manifestly erred in failing to find that Washington deflated his gross income.

Louisiana Revised Statute 9:315.1 states:

A.  The guidelines set forth in this Part are to be used in any proceeding to establish or modify child support filed on or after October 1, 1989. There shall be a rebuttable presumption that the amount of child support obtained by use of the guidelines set forth in this Part is the proper amount of child support.

B.  The court may deviate from the guidelines set forth in this Part if their application would not be in the best interest of the child or would be inequitable to the parties. The court shall give specific oral or written reasons for the deviation, including a finding as to the amount of support that would have been required under a mechanical application of the guidelines and the particular facts and circumstances that warranted a deviation from the guidelines. The reasons shall be made part of the record of the proceedings.

Louisiana Revised Statute 9:315.1(C) lists various considerations the trial court may undertake in deviating from the guidelines. "Since the enactment of the guidelines, a trial court's discretion in setting the amount of child support is structured and limited." *Voorhies v. Voorhies*, 96-342, p. 5 (La.App. 3 Cir. 10/9/96), 688 So.2d 1158, 1161. Unfortunately, we are unable to review this case because the record is inadequate. We have no idea what the trial court based its child support award on and whether, and in what amount, it deviated from the child support guidelines. We might assume that the trial court figured the child support figure based on Washington's annual income of $48,000. We could further infer that he deviated from the child support guidelines due to Washington's excessive debt.

5

However, the trial court's own language, "If one is to accept," leads us to question what exactly it did consider in formulating the child support award. Moreover, when a trial court deviates from the child support guidelines:

> [T]he record must contain oral or written reasons for the deviation, which are supported by the evidence. *Rushing v. Rushing*, 93-1066 (La.App. 3 Cir. 4/6/94), 635 So.2d 610; *Lanclos v. Lanclos*, 614 So.2d 170 (La.App. 3 Cir. 1993). Adequate reasons for deviating from the guidelines must include the trial court's findings as to the amount of support that would have been required under a mechanical application of the guidelines[.]

*McDaniel v. McDaniel,* 95-1314 p. 8 (La.App. 3 Cir. 3/6/96), 670 So.2d 767, 772.

As we have previously mentioned, there is absolutely no documentary evidence of Washington's debt in the record. There is nothing to indicate the means that the trial court used, i.e., the child support worksheet found in La.R.S. 9:315.20, or a recitation of the basic child support obligation pursuant to La.R.S. 9:315.19. For those reasons, we are unable to adequately review the record and we agree with Bazile's fifth assignment of error. Relating to her other assignments of error, we address them as follows.

**Spousal Income**

Louisiana Revised Statute 9:315(C)(5)(c) states:

> The court may also consider as income the benefits a party derives from expense-sharing or other sources; however, in determining the benefits of expense-sharing, the court shall not consider the income of another spouse, regardless of the legal regime under which the remarriage exists, except to the extent that such income is used directly to reduce the cost of a party's actual expenses.

Bazile argues that Washington testified that his wife pays their house note of $1,417, which should have reduced the cost of his actual living expenses. We note that the article suggests that the trial court "may" consider evidence of reduced expenses

6

based on expenses that the other spouse pays. The consideration of the second spouse's income is within the trial court's sound discretion. *See Greene v. Greene*, 93-789 (La.App. 3 Cir. 3/2/94), 634 So.2d 1286. Because the record is incomplete, we have no idea if the trial court considered that Washington's expenses were reduced by his wife's income.

## Other Benefits

Louisiana Revised Statute 9:315(C)(3)(b) states that gross income means:

> Expense reimbursement or in-kind payments received by a parent in the course of employment, self-employment, or operation of a business, if the reimbursements or payments are significant and reduce the parent's personal living expenses. Such payments include but are not limited to a company car, free housing, or reimbursed meals[.]

Bazile urges that the automobile payments, insurance, and gas that are paid by Washington's company should have been included in the calculation of his gross income for the purpose of determining child support. Again, we have nothing before us to indicate whether the information was used in determining gross income for purposes of calculating child support.

## Bank Statements

Next, Bazile urges that the trial court ignored Washington's bank statements in which thousands of dollars were deposited monthly. We reviewed the bank statements which showed deposits totaling much more than the $4,000 in income that Washington claims. It appears the trial court found Washington's testimony credible in that he was commingling business and personal funds for some time causing his personal checking account to appear to have much larger sums than

7

his salary would allow. Monthly checking account statements and cancelled checks show numerous commission checks written to employees in the amounts of $3,000 to $5,000. While this does not appear to be manifestly erroneous, the trial court should consider this evidence along with the mass of other evidence in making its decision.

## Real Estate

Finally, Bazile argues that the trial court erred in failing to include the sum of $8,000 as income for the sale of two pieces of real estate. Again, there is nothing in the record to suggest in what manner the trial court considered this temporary income and we are, therefore, unable to address it.

## CONCLUSION

If, in its discretion, the trial court believes it has sufficient evidence from the original trial on the merits and can articulate its reasons for formulating a child support award deviating from the guidelines, then no further hearings are required. The trial court should prepare written reasons pursuant to the Articles set forth in this opinion. However, if the trial court decides it needs further information in order to determine the appropriate child support award, it may, on its own motion, order further proceedings before submitting its reasons. Accordingly, this case is remanded to the trial court to proceed as it sees fit consistent with the reasons set forth in this opinion. Costs of this appeal are assessed equally between the parties.

**REMANDED.**

8