DEBRA BOUDREAUX CAMERON
v.
MICHAEL JAMES CAMERON
No. 07-1091.
Court of Appeals of Louisiana, Third Circuit.
March 5, 2008.
MICHAEL JAMES CAMERON, In Proper Person, Defendant/Appellant.
JULIE FELDER, Counsel for Plaintiff/Appellee: Debra Boudreaux Cameron.
Court composed of EZELL, PAINTER, and GENOVESE, Judges.
JAMES T. GENOVESE, Judge.
Michael James Cameron appeals the trial court's judgment increasing the amount of child support that he must pay to his former wife, Debra Boudreaux Cameron, for the support of their only child. For the following reasons, we affirm the judgment of the trial court.

FACTUAL AND PROCEDURAL HISTORY
Michael and Debra Cameron were married on September 30, 2000. Of their marriage, only one child was born, a son, Michael Patrick, on January 10, 2001. They were divorced on June 17, 2004. During the pendency of the divorce, the parties participated in an intake conference on November 7, 2003, wherein an interim child support award in the amount of $629.00 per month, payable to Ms. Cameron by Mr. Cameron, was recommended. Mr. Cameron timely objected to the hearing officer's recommendation on November 12, 2003; however, no hearing was ever held, nor was a judgment ever rendered reflecting this child support obligation.
On July 19, 2004, Ms. Cameron filed a rule to increase child support, urging that there had been a change in circumstances which necessitated an increase in Mr. Cameron's child support obligation, specifically, "the costs of child care ha[d] increased." Following an intake conference on September 21, 2004, the hearing officer recommended increasing the amount of Mr. Cameron's child support obligation from $629.00 per month to $712.00 per month. Mr. Cameron timely objected to the hearing officer's recommendation on September 23, 2004.
The trial court heard Ms. Cameron's rule and Mr. Cameron's objection to the hearing officer's recommendation on October 14, November 15, and November 16, 2004. At the conclusion of said hearing, the trial court gave oral reasons for judgment ordering an increase in Mr. Cameron's child support obligation to "$689.70 per month retroactive to September 23, 2003." For some unknown reason, a written judgment to this effect was not signed until December 7, 2006. Mr. Cameron timely appeals.

STANDARD OF REVIEW
"The trial court has great discretion in determining a child support award, and its findings of fact regarding financial matters underlying an award of child support will not be disturbed in the absence of manifest error or a clear abuse of discretion." Bazile v. Washington, 05-1583, p. 2 (La.App. 3 Cir. 6/14/06), 934 So.2d 214, 215 (citing McCorvey v. McCorvey, 05-889 (La.App. 3 Cir. 2/1/06), 922 So.2d 694, writ denied, 06-435 (La. 4/28/06), 927 So.2d 295; Murphy v. Murphy, 04-1332 (La.App. 3 Cir. 2/2/05), 894 So.2d 542, writ denied, 05-983 (La. 11/28/05), 916 So.2d 144).

DISCUSSION
We initially note that Mr. Cameron is appearing before this court in proper person.[1] His appellate brief simply sets forth a recitation of the facts and a somewhat obscure assertion of impropriety on the part of the trial court. Mr. Cameron's appellate brief is clearly not in compliance with the requirements of the Uniform RulesCourts of Appeal, Rule 2-12.4[2]. Said brief contains no assignments of error, no briefing of arguments, no certificate of service, and no jurisdictional statement. However, we note that the courts of this state have considered briefs in improper form when filed by pro se claimants. See Washington v. First Choice Trucking, 06-1479 (La.App. 3 Cir. 3/7/07), 953 So.2d 107; St. Agnes Health/Rehab. Center v. Ledet, 00-2023 (La.App. 3 Cir. 3/21/01), 782 So.2d 1145. Accordingly, since Mr. Cameron is representing himself, we will consider the merits of his appeal, despite the lack of proper form of his appellate brief. However, in order to best relay the assertions of Mr. Cameron, we feel it is appropriate to extensively recite pertinent excerpts from Mr. Cameron's appellate brief.
In said appellate brief, Mr. Cameron states (footnotes omitted):
In compliance with the equity and best interest requirements of [La.]R.S. 9:315.1, the appellant-defendant presented detailed evidence listed in the court record Evidence Log and testimony and exhibit evidence appearing in the official transcript of the case. This evidence included:
1. Admitted evidence and testimony to the living expenses of the appellant, an affadavit [sic] of the expenses and income of the defendant as well as his documented decrease in income submitted by his employer.
2. Admitted evidence and testimony of the appellant's extraordinary medical expenses associated with his chronic cardiac condition and official documentation of his medical condition.
3. Admitted evidence and testimony of appellant's decrease in finances to meet the financial support requirements of the court.
4. Admitted evidence and testimony documenting the medical condition and extraordinary medical expenses of the minor child child [sic].
Mr. Cameron continues (footnotes omitted):
Despite the introduction of this evidence and testimony . . . to establish the equitable support amount required under [La.]R.S. 9:315.1 and in consideration of the special circumstances of this case (ie.. [sic] the diminished financial circumstance and reduced income of the appellant in addition to the extraordinary medical expenses and future medical expenses of both the appellant and his minor son) the low[er] court failed in an emotionally heated way to fairly examine all of the evidence as well as consider the appellant's plea for a deviation or reduction in the child support amount, to establish an equitable support amount in the best interests [sic] of the child, and within the ability of the defendant to pay and reliably sustain given his reduced income.
Finally, Mr. Cameron argues (footnote omitted):
In ruling for an increase in child support in this instance, not only has the best interests [sic] of the minor child been threatened by the court in ordering an amount of support that the evidence presented by the appellant and the unique circumstances of the case document cannot possibly be maintained . . . but the court, while failing in its consideration of the appellant's request for deviation, failed to provide an equitable amount of support required under [La.]R.S. 9:315.1 by (1) requiring the appellant to inequitably pay support in excess of his true and correct income and in higher proportion than the plaintiff-appellee and (2) by ordering a child support increase upon an income already strained to the breaking point because of the necessary and involuntary financial requirements of the appellant's chronic medical condition; thereby placing both the health and financial condition of both the appellant and his minor son at risk.
Due to the lack of form and clarity in Mr. Cameron's appellate brief, we interpret Mr. Cameron's appeal before us to be based upon the contention that the trial court erred in failing to deviate from the child support guidelines in accordance with the provisions of La.R.S. 9:315.1. According to La.R.S. 9:315.1(B), the trial court "may deviate from the guidelines . . . if their application would not be in the best interest of the child or would be inequitable to the parties." Further, according to La.R.S. 9:315.1(C), the trial court may consider the following factors in determining whether to deviate from the basic child support guidelines:
(1) That the combined adjusted gross income of the parties is not within the amounts shown on the schedule in R.S. 9:315.19.
. . . .
(4) The extraordinary medical expenses of a party, or extraordinary medical expenses for which a party may be responsible, not otherwise taken into consideration under the guidelines.
(5) An extraordinary community debt of the parties.
. . . .
(7) The permanent or temporary total disability of a spouse to the extent such disability diminishes his present and future earning capacity, his need to save adequately for uninsurable future medical costs, and other additional costs associated with such disability, such as transportation and mobility costs, medical expenses, and higher insurance premiums.
(8) Any other consideration which would make application of the guidelines not in the best interest of the child or children or inequitable to the parties.
At the conclusion of the hearing, the trial court gave oral reasons for judgment, wherein it declared, in pertinent part:
Nowhere in the hearings that we've had did anyone show that a deviation was necessary for the best interest of the child.
. . . .
I didn't find anywhere in any of the information given to me that Michael Patrick would benefit, or it would be in his best interest if anyone paid less in child support.
Based on our review of the transcript of these proceedings, it is evident that Mr. Cameron contested Ms. Cameron's income and expenses, the amount being paid for Michael Patrick's daycare, and especially the amount established by the trial court as his income. During the hearing, Ms. Cameron explained to the trial court that subsequent to the intake conference held in November of 2003, she was asked to remove Michael Patrick from his daycare facility due to the acrimony between her and Mr. Cameron and the disruption caused as a result thereby. The evidence reflects that the cost of daycare increased from $102.00 to $314.00 per month as a result of their child being placed in the new daycare facility. According to her own admission and the evidence introduced into the record, Ms. Cameron's income was determined to be $1,620.00 per month. It was also determined that the cost of health insurance for Michael Patrick was $229.00 per month.
Mr. Cameron's income, however, was neither readily nor specifically discernible. According to Mr. Cameron, he is a "mechanical engineer at building, and because of the nature of [his] job [he is] required to do some overtime as far as on call and stuff like that." At the November 7, 2003 intake conference, the hearing officer determined that Mr. Cameron had a gross monthly income of $3,563.00. Mr. Cameron disputed the amount and testified at the hearing of this matter that said figure included a lot of overtime due to "working conditions and overtime that [he] had previously worked . . . ." Mr. Cameron likewise disputed the hearing officer's determination made at the September 21, 2004 intake conference that his gross monthly income was $2,619.00. According to Mr. Cameron, that amount also included overtime, and he had recently been informed by his employer that he would work only "a flat forty (40) hours." He testified that the overtime had been eliminated since September of 2003; however, we find that this testimony was refuted by paycheck stubs which showed that overtime had been paid to Mr. Cameron well into 2004. Mr. Cameron testified, "My rate of pay is [f]ourteen [d]ollars and [e]leven [c]ents ($14.11) an hour" which he stated totals "[g]ross pay, [t]wenty-two [h]undred [fifty-seven [d]ollars and [s]ixty [c]ents ($2,257.60)." We note that at the hearing on this matter on November 16, 2004, Ms. Cameron introduced into evidence a copy of Mr. Cameron's most current paycheck, dated November 5, 2004, for the pay period ending October 30, 2004, which indicated a year-to-date gross total income of $26,122.95. A monthly average of this amount is $2,612.30. Based on our review of the evidence in the record, the trial court determined Mr. Cameron's income to be less than the amount of $2,612.30, as offered by Ms. Cameron, and greater than the amount of $2,257.60, as testified to by Mr. Cameron. Therefore, we find that the trial court did not abuse its discretion in ordering Mr. Cameron to pay monthly child support in the amount of $689.70.
Counsel[3] for Mr. Cameron stated:
[W]e're . . . asking the Court for a deviation for various reasons. One (1) is the income he is making is not sufficient to pay that which was recommended. It's not sufficient to meet his needs  and this is why we're asking for a deviation. We have a child that has some exceptional medicals. We have also a payor that has exceptional medicals . . . .
Our review of the record in this matter reveals that the trial court found that Mr. Cameron did not satisfy his burden of proving that a deviation was in the best interest of the child. We agree with that finding. Mr. Cameron complains that the trial court failed to consider evidence of the extraordinary medical expenses of his son and himself which he argues is sufficient grounds for a deviation from the basic child support award pursuant to La.R.S. 9:315.1. According to Mr. Cameron, he suffers from chronic articular fibrillation and an arrhythmia problem. Though Mr. Cameron's medical records were introduced into evidence to substantiate his medical condition, we find it most noteworthy that, by his own admission, he had not been to a doctor for treatment of his condition for approximately one year prior to the hearing in this matter. Mr. Cameron also testified that Michael Patrick "has scoleosis [sic], and it's left an `S' shaped curve of his spine." According to Mr. Cameron, he has "been told by the doctors . . . because it's idiopathic and they don't know why he's got it, that there's a chance that he could have, be susceptible to neuromuscular disease." Consequently, according to Mr. Cameron, because of this possibility, Michael Patrick must undergo tests "every six (6) months . . . to eliminate certain diseases." We find Mr. Cameron's reliance upon a possible future diagnosis, and the possible cost of the medical treatment, insufficient to warrant a deviation from the child support guidelines. The evidence presented to the trial court does not include any evidence ofpresent extraordinary medicals. Therefore, we find that the trial court did not abuse its discretion by refusing to deviate from the child support guidelines on these grounds. Mr. Cameron failed to meet his burden of proof to warrant a deviation. This does not preclude Mr. Cameron from pursuing a modification of his child support obligation should there be a change in circumstances from November 16, 2004 to date.
For the foregoing reasons, we find no abuse of the trial court's vast discretion in increasing the child support award. Therefore, the trial court's judgment signed on December 7, 2006, which resulted from the hearing held on October 14, November 15, and November 16, 2004, is affirmed.

DECREE
We affirm the trial court's judgment signed December 7, 2006. Defendant-Appellant, Michael James Cameron, is assessed with all costs of this appeal.
AFFIRMED.
NOTES
[1] Also, no reply brief was filed by Ms. Cameron.
[2] Uniform RulesCourts of Appeal, Rule 2-12.4 provides, in pertinent part:

The brief of the appellant or relator shall set forth the jurisdiction of the court, a concise statement of the case, the ruling or action of the trial court thereon, a specification or assignment of alleged errors relied upon, the issues presented for review, an argument confined strictly to the issues of the case, free from unnecessary repetition, giving accurate citations of the pages of the record and the authorities cited, and a short conclusion stating the precise relief sought.
A copy of the judgment, order, or ruling complained of, and a copy of either the trial court's written reasons for judgment, transcribed oral reasons for judgment, or minute entry of the reasons, if given, shall be appended to the brief of the complaining litigant on appeal. If reasons for judgment were not given, the brief shall so declare.
. . . .
The argument on a specification or assignment of error in a brief shall include a suitable reference by volume and page to the place in the record which contains the basis for the alleged error. The court may disregard the argument on that error in the event suitable reference to the record is not made.
All specifications or assignments of error must be briefed. The court may consider as abandoned any specification or assignment of error which has not been briefed.
The language used in the brief shall be courteous, free from vile, obscene, obnoxious, or offensive expressions, and free from insulting, abusive, discourteous, or irrelevant matter or criticism of any person, class of persons or association of persons, or any court, or judge or other officer thereof, or of any institution. Any violation of this Rule shall subject the author, or authors, of the brief to punishment for contempt of court, and to having such brief returned.
[3] Though he is presently appearing in proper person, Mr. Cameron was represented by counsel at this hearing.